1  Thomas W. Barth, SBN 154075
   BARTH DALY LLP
2  431 I Street, Suite 201
   Sacramento, California 95814
3  Telephone: (916) 440-8600
   Facsimile:  (916) 440-9610
4
   Attorneys for ERIC HODGSON
5

6

7                    UNITED STATES DISTRICT COURT

8                    EASTERN DISTRICT OF CALIFORNIA

9

10
   ERIC HODGSON,                         Case No.
11
              Plaintiff,                 COMPLAINT FOR VIOLATIONS OF 18
12                                        U.S.C. §§1962(c), (d); INTENTIONAL
              v.                          MISREPRESENTATON, NEGLIGENT
13                                        MISREPRESENTATION, BREACH OF
                                          FIDUCIARY DUTIES, CONSTRUCTIVE
14                                        FRAUD, BREACH OF CONTRACT,
                                          UNLAWFUL BUSINESS PRACTICES
15 RANDLE ROPER, PATRICK GUNN, JOHN
   FINEN, TRACY TERRILL, individually, and
16 in his capacity as trustee of the TERRILL
   LIVING TRUST, VACAYA LLC, a Delaware
17 Limited Liability Company, and DOES 1
   through 10, inclusive,                JURY TRIAL DEMANDED
18
              Defendants.
19

20       Plaintiff Eric Hodgson (hereinafter "plaintiff"), for claims against defendants Randle

21 Roper, Patrick Gunn, John Finen, Tracy Terrill, individually and in his capacity as trustee of the

22 Terrill Living Trust, Vacaya LLC, and Does 1 through 10, inclusive (hereinafter "defendants"),

23 complains and alleges as follows:

24                                        I

25                                   JURISDICTION

26       1.      This court has jurisdiction over the subject matter of this action pursuant to 18

27 U.S.C. §1961, et seq., 28 U.S.C. §1331, 28 U.S.C. §1337, and 28 U.S.C. §1367.

28

BARTH DALY LLP
ATTORNEYS AT LAW
SACRAMENTO, CALIFORNIA

2.      Personal jurisdiction and venue in this District are proper pursuant to 18 U.S.C. §1965 and 28 U.S.C. §1391 (b) because defendants are found in, have agents in, and/or transact their business and affairs in this district, and a substantial part of the events or omissions giving rise to the claims for relief occurred in this District.

## II

## PARTIES

3.      Plaintiff is, and at all times relevant hereto was, an individual residing in the County of Sacramento, State of California.

4.      Defendant Randle Roper is, and at all times relevant hereto was, an individual residing in the State of Virginia.

5.      Defendant Patrick Gunn is, and at all times relevant hereto was, an individual residing in the County of Los Angeles, State of California.

6.      Defendant John Finen is, and at all times relevant hereto was, an individual residing in Brooklyn, State of New York.

7.      Defendant Tracy Terrill is, and at all times relevant hereto was, an individual residing in the County of Los Angeles, State of California.  Defendant Tracy Terrill is also sued herein in his capacity as trustee of the Terrill Living Trust, which plaintiff is informed and believes, and thereon alleges, is a revocable living trust, created pursuant to the laws of the State of California.

8.      Defendant Vacaya LLC is, and at all times relative hereto was, a Delaware limited liability company, with its principal office located in Brooklyn, New York, authorized to do business and doing business in California.

9.      Plaintiff is ignorant of the true names and capacities of those parties sued herein as Does 1 through 10, inclusive, and therefore sues these defendants by such fictitious names.  Each of said fictitious defendants has some liability on the basis of the allegations set forth below, and/or an actual controversy exists between plaintiff and said Doe defendants.  Plaintiff will amend this complaint to allege the true names and capacities when ascertained.  Each reference in this complaint to "defendant," "defendants" or any other specifically-named defendant, refers also

BARTH DALY LLP
ATTORNEYS AT LAW
SACRAMENTO, CALIFORNIA

1  to all defendants sued under fictitious names.

2      10.     Plaintiff is informed and believes, and thereon alleges that, at all times herein

3  mentioned, each of the defendants sued herein was the agent, employee, servant, partner,

4  successor or predecessor in interest, and/or joint venturer of the other defendants, and each of

5  them, and at all said times, each defendant was acting within the scope of his or her relationship

6  as agent, employee, servant, partner, successor/predecessor in interest and/or joint venturer of the

7  other defendants, and each of them.

8                                   **III**

9                    **FORMATION OF VACAYA LLC**

10      11.     In or about June 2015, defendant Randle Roper (hereinafter "Roper" for ease of

11  reference) was employed as the President of RSVP Vacations LLC, a California limited liability

12  company, which was at that time an affiliate company of, and owned by, Atlantis Events, Inc., a

13  California corporation with its principal office located in the County of Los Angeles, State of

14  California (hereinafter "Atlantis" for ease of reference).  RSVP Vacations LLC and Atlantis were

15  at that time advertised as companies producing and selling gay and lesbian cruises and resort

16  vacations all over the world for more than twenty-five (25) years.

17      12.     From in or about June 2015 through May 2016, defendant Roper communicated by

18  mail with plaintiff, outlining his plans to leave RSVP/Atlantis and start his own company. Roper

19  and plaintiff had been close friends since approximately 2008.  Roper also communicated his plan

20  to plaintiff, that he would encourage defendant Patrick Gunn (hereinafter "Gunn" for ease of

21  reference) and defendant John Finen (hereinafter "Finen" for ease of reference) to join him in his

22  plans to start the new company, which would produce and sell gay and lesbian cruises and resort

23  vacations, in the same industry as Atlantis.

24      13.     At the time of these communications by defendant Roper, defendant Gunn was

25  employed by Atlantis, marketing and promoting cruises and events produced by Atlantis and

26  RSVP Vacations.  At that time, defendant Finen owned John Finen Productions, LLC, a New

27  York limited liability company engaged in the business of producing events at venues such as

28  resorts and cruise ships, including the rental of equipment, the hiring of artists and employees to

BARTH DALY LLP
ATTORNEYS AT LAW
SACRAMENTO, CALIFORNIA

{00030641}                          - 3 -

1    operate the events, and the design and production of the event spaces.

2         14.    Starting in or about June 2015, Roper communicated with plaintiff about his

3    actions to start his new company, which included his use of personal funds to hire an advertising

4    agency owned by his personal friend to begin work on developing a name, logo and branding

5    materials. The new company being formed by Roper became defendant Vacaya LLC (hereinafter

6    "Vacaya" for ease of reference).

7         15.    In the Fall of 2016, defendant Gunn was fired from Atlantis, and he signed a

8    separation agreement, which confirmed his contractual obligations to Atlantis, to keep private the

9    company's confidential information, to relinquish all computer and other electronic data

10   belonging to Atlantis, and to refrain from any use of trade secrets belonging to Atlantis.

11   Immediately upon firing Gunn, Atlantis took actions to prevent Gunn's further access to Atlantis

12   confidential information, including the deactivation of Gunn's login credentials for all access to

13   electronic data.

14        16.    In August 2017, defendant Roper included plaintiff and defendant Tracy Terrill

15   (hereinafter "Terrill" for ease of reference) as volunteer staff, working on an Alaska cruise

16   chartered by RSVP Vacations.  According to Roper, the inclusion of plaintiff and Terrill as

17   members of the cruise staff was intended to provide them detailed information about the

18   operations of a chartered cruise ship, in preparation for the future operations of similar excursions

19   rented by Vacaya.

20        17.    In or about September or October 2017, defendant Roper resigned from his

21   employment with Atlantis. Roper also signed a separation agreement, similar to the agreement

22   signed by Gunn, which confirmed his contractual obligations to Atlantis, to keep private the

23   company's confidential information, to relinquish all computer and other electronic data

24   belonging to Atlantis, and to refrain from any use of trade secrets belonging to Atlantis.

25        18.    In or about late 2017 or early 2018, defendant Terrill paid $161,250 to Vacaya to

26   become a "founder" of the company. Plaintiff is informed and believes, and thereon alleges, that

27   this amount was determined to be equal to the individual sweat equity contributions of defendants

28   Roper, Gunn, and Finen, as they had determined, to make the four individuals equal members in

BARTH DALY LLP
ATTORNEYS AT LAW
SACRAMENTO, CALIFORNIA

Vacaya.  Plaintiff is further informed and believes, and thereon alleges, that Terrill became a member of defendant Vacaya in his capacity as trustee of the Terrill Living Trust, and therefore the Terrill Living Trust participated in official actions of defendant Vacaya as one of the company's members, acting by and through its trustee, Tracy Terrill.

## IV

## PLAINTIFF'S EMPLOYMENT AND MEMBERSHIP IN VACAYA LLC

19.     In about February 2018, defendant Roper encouraged plaintiff to work with him in support of building the new company, Vacaya. Defendant Roper promised plaintiff that he would be made a member with equity ownership in Vacaya, in exchange for his efforts in that regard. Roper arranged through friends still working at Atlantis for Terrill and plaintiff to participate as volunteers for an RSVP Caribbean cruise in February 2018, for the intended purpose of meeting with travel agents and potential investors, to discuss their potential, future business with Vacaya. During that cruise, Terrill requested that all travel agents with whom they met sign a nondisclosure agreement, to keep the conversations regarding Vacaya confidential from Atlantis, the owner of RSVP Vacations.

20.     From about February 2018 through May 2018, plaintiff continued working informally with Vacaya. In May 2018, plaintiff signed an independent contractor agreement, to provide sales consulting services for 160 hours per month, in exchange for monthly compensation of $4800, beginning retroactively in April 2018.  Vacaya paid plaintiff $4800 for his services in April 2018, but did not pay him the monthly amount in subsequent months. Plaintiff continued working in support of Vacaya, based on his reasonable expectation from the promises by defendants Roper, Terrill, and Finen, that his continuing efforts would be rewarded by his future equity ownership as a member of Vacaya.

21.     From in or about May 2018, and continuing in subsequent months, defendants Terrill and Finen communicated with plaintiff their alleged desire to make plaintiff a partner in Vacaya.  Defendant Finen explained to defendant Terrill and plaintiff that he wanted plaintiffs help with "reigning in" defendant Roper, who had become a tyrant, and who had misled both Finen and Terrill, according to their accounts, about his level of influence in the LGBT travel

Barth Daly LLP
Attorneys at Law
Sacramento, California

industry. They communicated to plaintiff their intention to support and vote for making plaintiff a member of the company, with other commitments by them detailed below, in exchange for the following obligatons from plaintiff: (a) plaintiff continuing to provide volunteer services to Vacaya for sales of cruise and resort vacations; (b) plaintiff providing printed materials at cost from his print company, Phenix Fine Art & Prints, LLC, in order to promote Vacaya through print media, handouts, entry cards, sweepstakes forms, and similar materials, with the retail value of those contributed services and materials being accumulated and ultimately included in the value of plaintiff's membership in Vacaya; and (c) substantial contributions and fundraising to and for the benefit of Vacaya.  Defendants Terrill and Finen communicated to plaintiff that the more substantial his contributions to Vacaya may be, the more likely he would be formally granted a substantial equity stake of ownership in the company.

22.     In these communications by defendants Terrill and Finen to vote for plaintiff's membership in Vacaya, they promised plaintiff the following: (a) immediately after plaintiff was added as a member of Vacaya, the company's operating agreement would be amended so that a majority vote of three (3) members would decide all matters concerning the operations and management of the company; (b) immediately after plaintiff was added as a member of Vacaya, Terrill and Finen would vote with plaintiff for an amendment of the company's operating agreement for the purpose of reapportioning equity ownership of the members of the company, so that plaintiff's equity ownership would be larger than several other members' individual equity shares, based on the greater value of all contributions, services, and materials having been provided by plaintiff; and (c) plaintiff's equity ownership in Vacaya would be fully vested immediately.

23.     Beginning in the Summer of 2018, plaintiff committed substantial time and expense in support of promotional advertising for Vacaya.  He became the Director of Sales for the company. He traveled to multiple locations across the country to attend promotional events, travel shows, Gay Pride events, business expositions, and in-person sales meetings.  Based on communications from defendants Terrill, Finen, and Roper that plaintiff must start "acting like a full partner right away," which included assuming substantial financial burdens associated with

BARTH DALY LLP
ATTORNEYS AT LAW
SACRAMENTO, CALIFORNIA

the company's operations, plaintiff did not request reimbursement of any expenses associated with his travels for promotion of Vacaya, including the costs associated with airfare, hotels, meals, and related expenses.

24.     Also beginning in mid-2018, plaintiff devoted increasing time, money, and efforts for the financial success of Vacaya in reliance on the promises by defendants Roper, Terrill and Finen that his contributions to the company would be rewarded with a substantial equity ownership interest in the company.  Plaintiff provided investments to Vacaya of $285,000, which were the only funds received by the company after about August 2018, and which allowed the company to continue operating, according to financial reports prepared by defendant Terrill. According to Terrill's financial reports, if plaintiff had not raised the substantial funds for Vacaya, the company would have been required to cancel a Celebrity Cruise charter scheduled for August 2019.  Plaintiff convinced the owner of an advertising agency to produce promotional videos and advertising, offer marketing consulting services, and provide other valuable promotional services without charge, in order to support the success of Vacaya.  He also convinced a celebrity to work as a cruise director for Vacaya at a rate, which was discounted approximately 75% off of his usual fees for an engagement of that length.  Plaintiff expanded his role in support of marketing the company by taking responsibility for all graphic design work through his company, Phenix, free of charge to Vacaya.  He renegotiated a charter contract with Emerald Waterways for a scheduled European river cruise, so that Vacaya could satisfy a longer schedule of lower periodic payments, to avoid cancellation of the cruise by Emerald Waterways.  Plaintiff negotiated favorable terms with another European river cruise operator, which allowed Vacaya to reduce its initial deposit to fifteen percent (15%) of the total cost, with the remaining balance to be paid within the last ninety (90) days before the cruise.  The favorable terms plaintiff negotiated allowed Vacaya to charter a river cruise in Portugal, which the company would not have otherwise been able to afford under the typical provisions for earlier payment of charter costs.

25.     In May 2019, the four named, individual defendants joined in a Vacaya company meeting and voted for plaintiff's membership in the company.  After the meeting, which was not attended by plaintiff, defendants Terrill and Finen communicated with plaintiff about the

company's decision.  They informed plaintiff that defendant Roper insisted that he would only allow plaintiff to become a member of the company if: (a) a supermajority vote of at least four (4) members would be necessary to pass any amendment of the operating agreement at any time through and including December 31, 2019; (b) plaintiff would only be authorized to receive a ten percent (10%) equity stake in the company, regardless of his much more substantial value of total contributions, services, materials, time and expense, which should have been valued well in excess of a twenty-five percent (25%) ownership share; and (c) plaintiff's equity ownership in the company would vest in equal one-quarter amounts over the course of four (4) years.  Despite the failure of defendants to honor their original promises to plaintiff about the higher level of his ownership interest and 100% immediate vesting of the entire share, Terrill and Finen communicated further promises to plaintiff that as of January 1, 2020, when a simple majority vote could enact further amendments to the Vacaya operating agreement, they would participate in a meeting and vote with plaintiff for the equity ownership amendment equal to the value of plaintiff's contributions, with one hundred percent (100%) immediate vesting of plaintiff's equity shares.

26.     During the Summer of 2019, after plaintiff became a member of Vacaya, defendant Terrill informed plaintiff in a video conference that the financial projections for Vacaya, which he and defendant Finen had previously shared with plaintiff, had been knowingly falsified by defendant Finen, and overstated the anticipated income of the company.  Terrill informed plaintiff that Finen's financial projections had not included the effect of overhead and related expenses of cruise and resort charters, had only included the cost of the charters themselves, and therefore understated the liabilities of the company for the costs of its operations. Terrill communicated to plaintiff that he had also been misled by Finen about the financial projections for the company, misrepresentations upon which he had relied in deciding to contribute funds to the company and become a member of Vacaya.  Upon learning that he had been misled, plaintiff confronted defendant Finen, who admitted that he had knowingly understated the costs of Vacaya vacation programs, but he assured plaintiff that the company could still be highly profitable in the future.

BARTH DALY LLP
ATTORNEYS AT LAW
SACRAMENTO, CALIFORNIA

27.     Approximately 90% or more of the communications from defendants to plaintiff, which are alleged hereinabove were made electronically, by means of email or internal company communications using the Slack database application, and therefore, these alleged communications were made by means included within the definition of "wire" transmission.

## V

## LAWSUIT BY ATLANTIS, INC.

28.     In August 2018, Atlantis sued defendants Roper, Gunn, and Vacaya in Los Angeles Superior Court, Case No. BC716072 (hereinafter, the "Atlantis lawsuit"). The Atlantis lawsuit alleged that Roper and Gunn used confidential information and trade secrets belonging to Atlantis in support of their formation and operation of Vacaya. In September 2018, Atlantis sought and obtained a court order in the Atlantis lawsuit, imposing a preliminary injunction against any continued use by the defendants named in the Atlantis lawsuit of certain proprietary business information belonging to Atlantis which may be in their possession.

29.     Upon being sued by his former employer in the Atlantis lawsuit, defendant Roper communicated to plaintiff and the other members of Vacaya about his plans to defend against the litigation. He contended that the contact list of travel agents he used to promote Vacaya's business had been previously compiled by him over the years, without intentionally adding confidential Vacaya information to his contact list.

30.     After discovery demands for electronic information in the Atlantis lawsuit, defendants Roper and Gunn revealed to plaintiff and defendants Terrill and Finen, that they had been withholding facts from plaintiff, Terrill and Finen about the confidential information, trade secrets, and other proprietary information belonging to Atlantis, which they had in their possession. Roper admitted that he had a full copy of the entire Atlantis electronic database in his possession, not just the list of travel agents he had allegedly compiled on his own. He claimed that the database "restored" (from the Cloud) when he purchased a new laptop, and he deliberately chose not to inform plaintiff, Terrill or Finen. Defendant Gunn admitted that he kept a complete hard drive copy of Atlantis's database on an external hard drive at his home, and that he had been using it to create and maintain Vacaya's marketing budget and strategies, without

BARTH DALY LLP
ATTORNEYS AT LAW
SACRAMENTO, CALIFORNIA

1  informing plaintiff, Terrill or Finen.  Plaintiff later learned that defendants Roper and Gunn was

2  using the log-in credentials of other Atlantis employees to gain electronic access to Google

3  analytics of Atlantis's website, seeing the rate of "click-throughs" by persons browsing the

4  website on certain pages of the website, compared to other pages, which were not getting

5  potential customer "clicks."

6      31.    In about June or July 2019, depositions of defendants in the Atlantis lawsuit were

7  scheduled and taken by counsel representing Atlantis.  During a subsequent telephone conference

8  call joined by defendants Roper and Gunn and plaintiff, plaintiff learned for the first time that

9  defendants Roper, Gunn, and Finen had coordinated their deposition testimonies, so that they

10  uniformly and falsely claimed that defendant Finen devised the initial concept and undertook

11  initial actions to form Vacaya.  They also falsely testified under oath in their depositions that

12  Finen later contacted defendant Roper to offer him the position of Chief Executive Officer of the

13  company, based on his experience and reputation within the LGBT travel community.

14  Defendants Roper, Gunn, and Finen created false emails to support the fraudulent story that Finen

15  made an offer to Roper to join the company.  Defendant Roper also falsely testified that he was

16  only involved in actions related to the new company in order to convince the owner of Atlantis,

17  his boss at the time, that additional resources be made available to RSVP Vacations to succeed

18  over the potential competition of the new company, without any intention by Roper at that time to

19  join the new company.  Plaintiff objected to the defendants lying in their depositions, but

20  defendants Roper and Gunn said that the testimony under oath had already been given and they

21  said, "It is what it is… that is our position."  Plaintiff is informed and believes, and thereon

22  alleges, that defendants Roper and Gunn did not disclose in discovery conducted in the Atlantis

23  lawsuit the facts relating to their continued possession and use of Atlantis's electronic database

24  and their continued fraudulent electronic break-ins to the Atlantis website for access to Atlantis

25  proprietary information.

26      32.    In the Summer of 2019, defendant Terrill informed plaintiff that poor sales of

27  Vacaya programs and mounting legal debt associated with defending against the Atlantis lawsuit

28  prevented Vacaya from funding anticipated annual salaries of approximately $100,000 to its

1    members in either 2020 or 2021, as had been outlined in the business plan shared with plaintiff.

2        33.    In October 2019, the members of Vacaya and their counsel attended a mediation

3    with representatives of Atlantis and their counsel, to attempt a resolution of the Atlantis lawsuit.

4    During the mediation, plaintiff voiced his concerns to the other members of Vacaya and their

5    counsel, stating outright that he had just recently been informed that "our defense is based on a

6    series of lies."  Plaintiff also raised concerns that defendants Roper and Gunn had been defended

7    using Vacaya funds, when the wrongdoing alleged in the Atlantis lawsuit was solely perpetrated

8    by them. But none of the other members of the company or counsel were receptive to his stated

9    concerns.  Plaintiff also repeatedly demanded during the course of the mediation that defendants

10   Roper and Gunn take full financial responsibility for the entire cost of the Atlantis lawsuit,

11   including any payment obligations of Vacaya which may be included in overall settlement terms

12   and all litigation costs and attorneys' fees incurred by Vacaya to defend against the Atlantis

13   lawsuit, because they were the persons committing the wrongs alleged in the Atlantis lawsuit.  All

14   the representatives of Vacaya at the mediation responded to plaintiff's repeated demands by

15   telling him that his demands concerned secondary issues, which would be decided after

16   settlement would be reached with Atlantis.  Plaintiff is informed and believes, and theron alleges,

17   that the parties in the Atlantis lawsuit reached tentative agreement on settlement terms at the

18   mediation, which involved certain settlement payments by Vacaya to Atlantis.  Although counsel

19   representing Vacaya in the Atlantis lawsuit have stated that an enforceable settlement was

20   reached with Atlantis as a result of the mediation in October 2019, the fact of settlement has not

21   been made a public record at the time of filing this complaint.

22       34.    Other than the communications between defendants and plaintiff alleged

23   hereinabove to have been by means of telephone, more than approximately 90% of all such

24   communications were made using emails or the Slack platform for internal company electronic

25   transmissions, and therefore, such communications meet the definition of communication by

26   means of "wire" transmissions.

27   ///

28   ///

BARTH DALY LLP
ATTORNEYS AT LAW
SACRAMENTO, CALIFORNIA

## VI

## SUSPENSION OF PLAINTIFF BY VACAYA

35.     During a resort program at the UNICO resort in late October 2019, plaintiff confronted defendants Finen and Terrill about their false promises regarding plaintiff's equity ownership and rights associated with membership in Vacaya.  He demanded that they honor the promises that were made to him about his rights in Vacaya, which promises had started in early 2018.  Both defendants Finen and Terrill communicated to plaintiff that they would be stepping away from any continued involvement in Vacaya.  Defendant Finen had committed an attempted suicide in July 2019, which he linked to the stress of his involvement in Vacaya, and he informed plaintiff that for reasons of his mental health and financial reasons, he would be stepping back from the company.  Defendant Terrill informed plaintiff that he would no longer be involved in day-to-day operations of Vacaya.

36.     In November 2019, plaintiff began looking for other sources of income, since defendant Terrill previously informed him that the members would not be able to draw a salary from Vacaya anytime during 2020 or 2021.  Plaintiff made contact with a tour organizer in South Africa who invited him to participate in an LGBT group, which ultimately led plaintiff to working with them as a consultant. Plaintiff made arrangements to attend a trip to South Africa for purposes related to his separate consulting work with the South Africa tour organizer. Plaintiff informed defendant Finen that he would be going on the South Africa trip prior to departure, for plaintiff's personal purposes of securing a consulting contract. Plaintiff further informed Finen that the South Africa trip was completely unrelated to any activities associated with Vacaya.

37.     Plaintiff attended the trip to South Africa in November 2019. Another individual, Dane DeBruin, who had participated in the August 2019 Vacaya cruise also attended, based on an invitation by plaintiff. Plaintiff made it clear to Mr. DeBruin that his attendance as a guest on the South Africa trip was solely for purposes as a pleasure trip, without any association with any business purposes connected to Vacaya. During the South Africa trip, Mr. DeBruin caused multiple disruptions, and plaintiff asked that he depart early and return to his home.

///

BARTH DALY LLP
ATTORNEYS AT LAW
SACRAMENTO, CALIFORNIA

1      38.     On or about November 27, 2019, plaintiff received a letter by email from Vacaya,

2   purportedly signed by the other four members of the company, giving him notice that the four

3   individual defendants thereby suspended his responsibilities as Director of Sales for Vacaya until

4   further notice, pending an investigation of allegations apparently made by Mr. DeBruin, that

5   plaintiff had used Vacaya resources on the South Africa trip, that Mr. DeBruin was not authorized

6   to accompany plaintiff on the trip, and that "certain actions during this trip concerning Mr.

7   DeBruin could violate federal and state law, as well as Vacaya's policies against harassment."

8   (hereinafter referred to as the "suspension letter").

9      39.     In the days following receipt of the suspension letter, plaintiff demanded further

10   information about the basis for his suspension, and he challenged the legitimacy of the

11   suspension. Plaintiff asserted that the suspension appeared to be for personal reasons, because it

12   was completely unfounded in fact, and on its face, the suspension letter referred to alleged

13   infractions which were much less significant as potential threats to Vacaya than the egregious and

14   intentional fraudulent actions by the individual defendants relating to matters associated with the

15   Atlantis lawsuit. In substance, plaintiff challenged the suspension of his duties, when the other

16   members of Vacaya named as defendants herein had indisputably caused an existential financial

17   threat to the continued viability of Vacaya and had intentionally lied and misled plaintiff about

18   their continuing breaches of legal and contractual obligations to Atlantis. Moreover, plaintiff

19   repeatedly communicated to the other individual members named as defendants herein the same

20   information he originally told defendant Finen prior to the South Africa trip, that the South Africa

21   trip, and his involvement in the trip, were for personal reasons completely unrelated to Vacaya,

22   and without any use of any resources associated with Vacaya.

23      40.     The individual named defendants persisted in their assertion of a suspension of

24   plaintiff's duties with Vacaya, despite plaintiff's challenges and detailed factual statements about

25   the South Africa trip having no relationship to the business of Vacaya.  All four defendants

26   threatened that plaintiff would be refused entry onto the Emerald Waterways European river

27   cruise, parting from Amsterdam in the first week of December 2019, as a result of his suspension

28   from duties. Despite their knowledge that plaintiff had made arrangements for his parents to

Barth Daly llp
Attorneys at Law
Sacramento, California

accompany him on that cruise, defendants persisted in their threat that he would not be allowed entry onto the cruise. After several email communications between plaintiff and defendants, in which plaintiff raised multiple legal defects in the process undertaken by defendants to suspend his duties, including the fact that the suspension allegedly resulted from a meeting of the members of the company, which had been conducted without proper notice to plaintiff, defendants ultimately withdrew their threat, and plaintiff participated in the Emerald Waterways cruise.  But, defendants did not alter the suspension of plaintiff from his duties as Director of Sales.  Even though plaintiff continued to communicate with third parties on behalf of Vacaya, to support continuing operations and sales for the company, defendants took no action to stop him other than cutting off his access to the company database.

41.     Plaintiff is informed and believes, and thereon alleges, that defendants intentionally used their false allegations about plaintiff's South Africa trip and the sham suspension of his duties to prevent plaintiff from demanding his rights to a meeting of Vacaya as of January 1, 2020, at which time amendments of the operating agreement could be determined by a simple majority vote, rather than the supermajority required through the end of December 2019.  On numerous occasions prior to the suspension of plaintiff's duties, defendants Terrill and Finen had communicated their assurances to plaintiff that as soon as amendments of the operating agreement could be enacted by a simple majority vote of the members, they would support action to confirm a greater equity ownership share of plaintiff and related actions to reduce the equity interest and control of Vacaya by defendants Roper and Gunn.  Plaintiff is further informed and believes, and thereon alleges, that defendants Roper and Gunn ultimately convinced defendants Terrill and Finen to turn against plaintiff, and to take adverse actions against plaintiff, including his suspension of duties and ultimate termination from Vacaya, for reasons related to: (a) plaintiff's demands that defendants Roper and Gunn take full financial responsibility for the costs, expenses, attorneys' fees, and settlement payments imposed on Vacaya, related to the Atlantis lawsuit, and (b) the continued fraudulent intent of defendants, that they never intended to allow plaintiff to have an equity ownership interest in Vacaya commensurate with his contributions, services, materials, time and expenses, as they had repeatedly promised.

BARTH DALY LLP
ATTORNEYS AT LAW
SACRAMENTO, CALIFORNIA

BARTH DALY LLP
ATTORNEYS AT LAW
SACRAMENTO, CALIFORNIA

## VII

## TERMINATION OF PLAINTIFF FROM VACAYA

42.     On March 19, 2020, the four individually named defendants and plaintiff participated in a noticed meeting of the Vacaya members to decide matters related to plaintiff's termination from his membership in the company.   At the meeting, plaintiff made a final demand that defendants Terrill and Finen honor their prior commitments to plaintiff that they would hold defendants Roper and Gunn financially accountable for the costs and expenses arising from the matters raised in the Atlantis lawsuit, and that they would join him to take action against the prior wrongdoings in all respects by Roper and Gunn.  The defendants individually, and as members acting on behalf of defendant Vacaya, voted unanimously to confirm removal of plaintiff from his membership for cause, with direction to repurchase his vested units of ownership.  The bases for removal of plaintiff for cause were stated at the meeting to include all allegations against him, commencing with the matters related to his suspension of duties in November 2019, including plaintiff's communication with third parties about the wrongdoing and other improper actions of the four named defendants, which defendants alleged to be in violation of confidentiality and non-disparagement provisions of Vacaya's limited liability agreement and related documents, and further including the matters discussed by plaintiff at the meeting.

## VIII

## DAMAGES CAUSED BY DEFENDANTS RELATING TO THE ATLANTIS LAWSUIT

43.     The actions and failures to act by defendants who were culpably related to the matters raised in the Atlantis lawsuit caused numerous, cascading losses and damages to plaintiff's ownership interest in Vacaya.  Those defendants were primarily Roper and Gunn, based on their intentional and continuing violations of employment and release agreements signed with Atlantis, and further based on their false testimony given under oath in defense of the Atlantis lawsuit.  Defendant Finen is also culpable for losses associated with the Atlantis lawsuit, based on his intentionally false testimony under oath in deposition in the Atlantis lawsuit.

44.     The losses and damages to plaintiff's ownership interest in Vacaya relating to the wrongdoing of defendants, associated with the allegations of the Atlantis lawsuit, include, but are

BARTH DALY LLP
ATTORNEYS AT LAW
SACRAMENTO, CALIFORNIA

not limited to the financial effects of: (a) the inability of Vacaya to continue fundraising while defending open litigation, (b) the resulting lack of company funds to advertise upcoming cruises and resort programs, (c) reduced sales of passengers for the August 2019 chartered cruise, with lost on-board sales associated with the reduction of passengers, (d) the lack of funds necessary to charter subsequent cruise trips, which prevented pre-sales on the August 2019 cruise of the subsequently scheduled cruise, (e) the reduction of occupancy at the October 2019 UNICO resort program, (f) the lack of funds necessary to charter subsequent resort locations, which prevented pre-sales at the October 2019 UNICO program of the subsequent 2020 resort program, and (g) the inability of Vacaya to maintain the overall marketing cost which is necessary to build the reputation of the company as a trusted provider of cruise and resort programs.  The reduced sales of passengers on the August 2019 chartered cruise also proximately caused defendants to give away approximately 250 free tickets for passengers on the cruise, by means of falsely informing prior sweepstakes entrants that they had "won" a free trip, despite the fact that the company had not held a sweepstakes, because defendants were required to meet certain minimum thresholds of passenger on-board spending to avoid penalties from the cruise line. Plaintiff is informed and believes, and thereon alleges, that the revenue Vacaya lost for the cruise and resort programs occurring in 2019 as a result of defendants' wrongful conduct relating to the matters at issue in the Atlantis lawsuit exceeded $900,000, and the revenue Vacaya lost in 2019 associated with lost passenger bookings for 2020 and 2021 cruise and resort programs exceeded $700,000. These cascading, adverse financial effects of the wrongdoing by defendants Roper, Gunn, and Finen substantially reduced the value of Vacaya as a going concern and threaten the continued ability of Vacaya to operate, as will be proven at trial, thereby causing a direct and proximate reduction of plaintiff's ownership interest in the company.  Plaintiff is informed and believes, and thereon alleges, that the loss of total value of the Vacaya business related just to the lost revenue estimated herein would be at least approximately $1,000,000.

///

///

///

## IX

## DAMAGES CAUSED BY OTHER ACTIONS OF DEFENDANTS

45.     The incidents and patterns of wrongdoing by defendants against plaintiff, which were not related to matters at issue in the Atlantis lawsuit, caused him direct and proximate injuries associated with the fraudulent inducement of plaintiff to contribute a large amount of funds, valuable resources and services, and very substantial time and expense, all as previously alleged herein, in reliance on promises of a large equity ownership in the company and related benefits associated with plaintiff's greater influence in the management of the company.  As a direct and proximate result of defendants' actions and failures to act, as alleged herein, plaintiff was fraudulently prevented from acquiring the substantial ownership interest he had been promised by defendants, based on his level of effort and financial support for the company, and he ultimately was subjected to the fraudulent and unfounded suspension of his duties and termination from membership in the company.  His losses and damages are subject to proof at trial, but include at a minimum, the loss of his equity ownership interest in the company and the loss of his contributions toward the company, in the forms of money, services, materials, time, and unreimbursed expenses.  Plaintiff is informed and believes, and thereon alleges, that the loss of the value of his contributions alone is approximately $650,000.

## FIRST CLAIM FOR RELIEF

### (Violation of 18 U.S.C. §1962(c), against Defendants Roper, Gunn, and Finen)

46.     Plaintiff incorporates by reference, as though fully set forth herein, each and every paragraph alleged in this complaint.

47.     Plaintiff is a "person" under 18 U.S.C. §1961(3).

48.     Each of defendants Roper, Gunn, and Finen, are a "person" under 18 U.S.C. §1961(3).

49.     Vacaya constitutes an "enterprise" within the meaning of 18 U.S.C. §1961(4), which was engaged in activities affecting interstate commerce at all times relevant to this Complaint.

///

BARTH DALY LLP
ATTORNEYS AT LAW
SACRAMENTO, CALIFORNIA

50.     Each of defendants Roper, Gunn, and Finen, were and are associated with the enterprise and have conducted or participated, directly or indirectly, in the management and operation of the affairs of the enterprise in relationship to the plaintiff through a pattern of racketeering activity unlawful under 18 U.S.C. §1961(1)(B), to wit: acts indictable under 18 U.S.C. §1341 (relating to mail fraud), §1343 (relating to wire fraud), and §1832 (relating to theft of trade secrets).

51.     Plaintiff has suffered substantial injury to his business or property within the meaning of 18 U.S.C. §1964(c) by reason of the violations of 18 U.S.C. §1962(c) committed by the named defendants, including but not limited to losses and damages to plaintiff's equity ownership interest in Vacaya, his continuing membership in Vacaya, and the amounts contributed to Vacaya by plaintiff based on the actions of defendants, which were fraudulent.

WHEREFORE, plaintiff prays for judgment against defendants and each of them as hereinafter set forth.

## SECOND CLAIM FOR RELIEF

**(Violation of 18 U.S.C. §1962(d), against Defendants Roper, Gunn, and Finen)**

52.     Plaintiff incorporates by reference, as though fully set forth herein, each and every paragraph alleged in this complaint.

53.     Plaintiff is a "person" under 18 U.S.C. §1961(3).

54.     Each of defendants Roper, Gunn, and Finen, are a "person" under 18 U.S.C. §1961(3).

55.     Vacaya constitutes an "enterprise" within the meaning of 18 U.S.C. §1961(4), which was engaged in activities affecting interstate commerce at all times relevant to this Complaint.

56.     Each of defendants Roper, Gunn, and Finen, were and are associated with the enterprise and conspired within the meaning of 18 U.S.C. §1962(d) to violate 18 U.S.C. §1962(c), that is, the defendants conspired to conduct or participate, directly or indirectly, in the management and operation of the affairs of Vacaya in relationship to the plaintiff through a pattern of racketeering activity unlawful under 18 U.S.C. §1961(1)(B), to wit: acts indictable

BARTH DALY LLP
ATTORNEYS AT LAW
SACRAMENTO, CALIFORNIA

1   under 18 U.S.C. §1341 (relating to mail fraud), §1343 (relating to wire fraud), and §1832

2   (relating to theft of trade secrets).

3       57.    Plaintiff has suffered substantial injury to his business or property within the

4   meaning of 18 U.S.C. §1964(c) by reason of the violations of 18 U.S.C. §1962(d) committed by

5   the named defendants, including but not limited to losses and damages to plaintiff's equity

6   ownership interest in Vacaya, his continuing membership in Vacaya, and the amounts contributed

7   to Vacaya by plaintiff based on the actions of defendants, which were fraudulent.

8       WHEREFORE, plaintiff prays for judgment against defendants and each of them as

9   hereinafter set forth.

10   **THIRD CLAIM FOR RELIEF**

11   **(Intentional Misrepresentation Against All Defendants)**

12       58.    Plaintiff incorporates by reference, as though fully set forth herein, each and every

13   paragraph alleged in this complaint.

14       59.    On the dates alleged hereinabove, defendants made representations and promises

15   to plaintiff regarding his future ownership interest in Vacaya and related membership rights in the

16   company for management and control of the organization and operation of the company, all as

17   previously alleged, in consideration for, and on account of, plaintiff's contributions of large

18   amounts of money, valuable resources and services, and very substantial time and expense,

19   without compensation otherwise.

20       60.    The representations and promises by defendants were in fact false.  Plaintiff is

21   informed and believes, and thereon alleges, that the true facts were that defendants were only

22   interested in obtaining from plaintiff the money, resources, services, time and expense provided

23   by plaintiff for the benefit of defendants, without any intent to provide plaintiff with any

24   commensurate ownership interest in Vacaya or any continued membership in the company.

25       61.    When defendants made these representations and promises, they knew them to be

26   false and made these representations and promises with the intention to deceive and defraud the

27   plaintiff and to induce the plaintiff to act in reliance on these representations and promises in the

28   manner alleged herein, or with the expectation that plaintiff would so act.

BARTH DALY LLP
ATTORNEYS AT LAW
SACRAMENTO, CALIFORNIA

{00030641}    - 19 -

COMPLAINT FOR VIOLATIONS OF 18 U.S.C. §§1962(C), (D); ET AL.

62.    Plaintiff, at the time these representations were made by defendants and at the time plaintiff took the actions herein alleged, was ignorant of the falsity of defendant's representations and promises and believed them to be true. In reliance on these representations and promises, plaintiff was induced to and did contribute large amounts of money, valuable resources and services, and very substantial time and expense, without compensation otherwise, for the benefit of defendants.  As previously alleged in detail, as of approximately May 2018, plaintiff began and continued to make substantial contributions of time, money and talent to and for the benefit of defendants, in reliance on these representations and promises by defendants. Had plaintiff known the actual facts, he would not have taken such action. Plaintiff's reliance on defendants' representations and promises was justified based on the facts otherwise known to him at the time.

63.    As a proximate result of the fraudulent conduct of defendants as herein alleged, plaintiff was induced to obtain and contribute large sums of investment money, valuable resources and services, and very substantial time and expense to and for the benefit of defendants in an attempt to obtain and retain the substantial equity ownership interest in the company, retain his membership in the company, and obtain valuable consideration for his substantial contributions to Vacaya.  The amount of damages and losses are subject to proof at trial, beyond the specific allegations set forth in this Complaint.

64.    The aforementioned actions, misrepresentations, and false promises  of defendants were intentional misrepresentations, deceit, or concealment of material facts known to defendants, with the intention on the part of defendants of thereby depriving plaintiff of property or legal rights or otherwise causing injury, and was despicable conduct that subjected plaintiff to a cruel and unjust hardship in conscious disregard of plaintiff's rights, so as to justify an award of exemplary and punitive damages.

WHEREFORE, plaintiff prays for judgment against defendants and each of them as hereinafter set forth.

///

///

///

BARTH DALY LLP
ATTORNEYS AT LAW
SACRAMENTO, CALIFORNIA

**FOURTH CLAIM FOR RELIEF**

**(Negligent Misrepresentation Against All Defendants)**

65.     Plaintiff incorporates by reference, as though fully set forth herein, each and every paragraph alleged in this complaint.

66.     On the dates alleged hereinabove, defendants made representations and promises to plaintiff regarding his future ownership interest in Vacaya and related membership rights in the company for management and control of the organization and operation of the company, all as previously alleged, in consideration for, and on account of, plaintiff's contributions of large amounts of money, valuable resources and services, and very substantial time and expense, without compensation otherwise.

67.     The representations and promises by defendants were in fact false.  Plaintiff is informed and believes, and thereon alleges, that the true facts were that defendants were only interested in obtaining from plaintiff the money, resources, services, time and expense provided by plaintiff for the benefit of defendants, without any intent to provide plaintiff with any commensurate ownership interest in Vacaya or any continued membership in the company.

68.     When defendants made these representations and promises, they had no reasonable ground for believing them to be true and made these representations and promises with the intention to induce plaintiff to act in reliance on these representations and promises in the manner alleged herein, or with the expectation that plaintiff would so act.

69.     Plaintiff, at the time these representations were made by defendants and at the time plaintiff took the actions herein alleged, was ignorant of the falsity of defendant's representations and promises and believed them to be true. In reliance on these representations and promises, plaintiff was induced to and did contribute large amounts of money, valuable resources and services, and very substantial time and expense, without compensation otherwise, for the benefit of defendants.  As previously alleged in detail, as of approximately May 2018, plaintiff began and continued to make substantial contributions of time, money and talent to and for the benefit of defendants, in reliance on these representations and promises by defendants. Had plaintiff known the actual facts, he would not have taken such action. Plaintiff's reliance on defendants'

BARTH DALY LLP
ATTORNEYS AT LAW
SACRAMENTO, CALIFORNIA

1    representations and promises was justified based on the facts otherwise known to him at the time.

2          70.    As a proximate result of the fraudulent conduct of defendants as herein alleged,

3    plaintiff was induced to contribute large sums of money, valuable resources and services, and

4    very substantial time and expense two and for the benefit of defendants in an attempt to obtain

5    and retain the substantial equity ownership interest in the company, retain his membership in the

6    company, and obtain valuable consideration for his substantial contributions to Vacaya.  The

7    amount of damages and losses are subject to proof at trial, beyond the specific allegations set

8    forth in this Complaint.

9          WHEREFORE, plaintiff prays for judgment against defendants and each of them as

10   hereinafter set forth.

11                    **FIFTH CLAIM FOR RELIEF**

12             **(Breach of Fiduciary Duties Against All Defendants)**

13         71.    Plaintiff incorporates by reference, as though fully set forth herein, each and every

14   paragraph alleged in this complaint.

15         72.    On or about May 2018, plaintiff and the four named individual defendants formed

16   a joint venture, evidenced orally and in writing, for the purpose of improving the financial,

17   operational, and general business capabilities of Vacaya, and for the purpose of building Vacaya's

18   brand and reputation as a premier provider of LGBT cruise and resort vacation programs.  The

19   intent of the joint venture and the actions of plaintiff in support of the joint venture, on and after

20   May 2018, have been previously alleged herein. Moreover, the formal joinder of plaintiff as a

21   member of Vacaya, by vote of the other members in or about May 2019, continued subject to the

22   same intent and purpose of improving the financial, operational, and general business capabilities

23   of Vacaya, and building Vacaya's brand and reputation in its industry.

24         73.    By the actions of defendants previously alleged herein, defendants breached their

25   duty of care imposed by Corporations Code §16404 to plaintiff as a member of the joint venture

26   and the limited liability company.

27         74.    As a proximate result of defendants' breaches of their duty of care to plaintiff,

28   plaintiff suffered damages, including but not limited to the loss of his equity ownership interest,

BARTH DALY LLP
ATTORNEYS AT LAW
SACRAMENTO, CALIFORNIA

1   salary, and future profits interest in Vacaya, the loss of his membership in Vacaya, the loss of the

2   substantial value of contributions, resources and services, and time and expenses incurred by

3   plaintiff in support of the joint venture and limited liability company, with a value subject to

4   proof at trial.

5   WHEREFORE, plaintiff prays for judgment against defendants and each of them as

6   hereinafter set forth.

7   ### SIXTH CLAIM FOR RELIEF

8   **(Constructive Fraud Against the Individual Defendants)**

9   75.   Plaintiff incorporates by reference, as though fully set forth herein, each and every

10   paragraph alleged in this complaint.

11   76.   By virtue of plaintiff's participation in the joint venture among himself and

12   defendants as of approximately May 2018 and the subsequent membership of plaintiff in Vacaya,

13   the relationship between plaintiff and defendants was fiduciary in nature. Defendants thereby

14   owed plaintiff the fiduciary duties of loyalty and care, and the obligation to conduct partnership

15   business in good faith and fair dealing. Because plaintiff's confidence in defendants' integrity

16   caused plaintiff to and trust defendants with the authority to act for the partnership, a confidential

17   relationship existed at all times herein mentioned between plaintiff and defendants.

18   77.   Defendants breached their fiduciary duties to plaintiff and violated the relationship

19   of trust and confidence by excluding plaintiff from his interest in the joint venture and limited

20   liability company and by securing an advantage over plaintiff by misleading plaintiff to his

21   prejudice.

22   78.   Plaintiff placed confidence in and relied on defendants until he became aware of

23   and discovered defendants' acts committed in breach of their fiduciary duties. Until those times,

24   plaintiff had reasonably relied on defendants in view of their relationship as partners.

25   79.   As a result of defendants' constructive fraud as herein alleged, plaintiff has been

26   damaged in a sum further alleged herein and as subject to proof at trial.

27   WHEREFORE, plaintiff prays for judgment against defendants and each of them as

28   hereinafter set forth.

Barth Daly LLP
Attorneys at Law
Sacramento, California

{00030641}

1

## SEVENTH CLAIM FOR RELIEF

2

### (Breach of Contract Against All Defendants)

3      80.     Plaintiff incorporates by reference, as though fully set forth herein, each and every

4   paragraph alleged in this complaint.

5      81.     On or about May 2019, at Sacramento County, California, plaintiff and defendants

6   entered into a contract for the purpose of plaintiff formally joining Vacaya as a member of the

7   limited liability company. The contract between plaintiff and defendants was evidenced by

8   several written agreements, including: (a) the Second Amended and Restated Limited Liability

9   Company Agreement, Vacaya LLC, a copy of which is attached hereto as Exhibit A and made a

10  part of this pleading (the "limited liability agreement"); and (b) the Confidentiality, Assignment

11  of Inventions, and Restrictive Covenant Agreement, a copy of which is attached hereto as Exhibit

12  B and made a part of this pleading (the "non-disclosure agreement").

13     82.     On or about November 27, 2019, defendants materially breached the contract by

14  issuing a written notice of suspension of plaintiff's duties as Director of Sales for Vacaya, as

15  previously alleged, without reasonable justification and in direct violation of material terms of the

16  contract and written agreements between the parties.

17     83.     As a direct result of defendants' breach of the material terms of the contract

18  between the parties in November 2019, plaintiff was excused from further performance of

19  conditions, covenants, and promises required on his part to be performed, and to the extent

20  plaintiff was not so excused, he performed all conditions, covenants, and promises required of

21  him. Specifically, the provisions of the written agreements constituting the contract between the

22  parties, which defendants subsequently cited as justification for termination of plaintiff's

23  membership in Vacaya and involuntary repurchase of plaintiff's vested equity interest in Vacaya,

24  were no longer binding as conditions, covenants, or promises required on plaintiff's part to be

25  performed, after the unmitigated breach of material terms of the contract between the parties by

26  defendants in November 2019.

27     ///

28     ///

BARTH DALY LLP
ATTORNEYS AT LAW
SACRAMENTO, CALIFORNIA

84.     As a direct and proximate result of defendants' breach of the contract between the parties in or about November 2019, plaintiff has suffered damages associated with the loss of his equity ownership in the company, loss of future profits interest in the company, loss of membership in the company, and loss of the value of his substantial contributions of money, services, materials, time and expense to the company, all as previously alleged and subject to proof at trial.

WHEREFORE, plaintiff prays for judgment against defendants and each of them as hereinafter set forth.

## EIGHTH CLAIM FOR RELIEF

### (Unlawful Business Practices Against All Defendants)

85.     Plaintiff incorporates by reference, as though fully set forth herein, each and every paragraph alleged in this complaint.

86.     On or about March 19, 2020, defendants terminated plaintiff's employment as Director of Sales of Vacaya, along with the consequential termination of his membership in Vacaya and the involuntary repurchase of his vested ownership interest in the company, on the basis of allegations, *inter alia*, that plaintiff had violated provisions of the Vacaya limited liability agreement and non-disclosure agreement, relating to confidentiality and non-disparagement of the company and its members.

87.     The policies and provisions of the limited liability agreement and non-disclosure agreement, on which defendants based their adverse action against plaintiff, are unfair labor practices in violation of 29 U.S.C. §158(a)(1), as they reasonably tend to chill, interfere with, restrain, or coerce employees in the exercise of rights guaranteed in 29 U.S.C. §157.

88.     As a violation of 29 U.S.C. §158(a)(1), the policies and provisions of the limited liability agreement and non-disclosure agreement, on which defendants based their adverse action against plaintiff, are an unlawful business practice, under the provisions of California Business & Professions Code §17200.

89.     As a direct and proximate result of defendants' conduct, defendants have received and continue to receive the benefits of the unlawful business practice, by depriving plaintiff of his

BARTH DALY LLP
ATTORNEYS AT LAW
SACRAMENTO, CALIFORNIA

equity ownership interest in Vacaya and his entitlement to a greater equity ownership and profits interest in Vacaya, based on his substantial contributions for the benefit of the company.

WHEREFORE, plaintiff prays for judgment against defendants and each of them as hereinafter set forth.

## **PRAYER FOR RELIEF**

WHEREFORE, plaintiff prays for judgment against defendants and Does 1 through 10, inclusive, as follows:

1.     For general, special and consequential damages according to proof at trial;

2.     For the maximum legal interest as provided by law or statute for pre- and post-judgment interest;

3.     For treble damages against defendants Roper, Gunn, and Finen, with respect to the First and Second Claims for Relief, including but not limited to the costs of this suit including reasonable attorneys' fees

4.     For equitable relief as may be appropriate pursuant to applicable law, including Business & Professions Code §17203, including but not limited to enjoining defendants from: (a) continuing their scheme to defraud plaintiff from his entitlement to equity ownership interest in the value of the business and profits interest in Vacaya; and (b) continuing the unlawful business practices of defendants;

5.     For punitive and exemplary damages against defendants for their fraudulent and intentionally deceitful conduct against plaintiff;

6.     For attorneys' fees as may be authorized by statute; and

7.     For such other and further relief as the Court deems just and proper.

Dated:  March 25, 2020.          BARTH DALY LLP


By_____/s/ Thomas W. Barth_____
          THOMAS W. BARTH

Attorneys for Plaintiff ERIC HODGSON

BARTH DALY LLP
ATTORNEYS AT LAW
SACRAMENTO, CALIFORNIA