1

2

3

4

5

6

7

8                              UNITED STATES DISTRICT COURT

9                          FOR THE EASTERN DISTRICT OF CALIFORNIA

10    ERIC HODGSON,                                  No.  2:20-cv-00650-KJM-DB

11                        Plaintiff,

12              v.                                    ORDER

13    RANDLE ROPER, et al.,

14                        Defendants.

15

16              In this dispute over plaintiff's involvement in a joint business venture with the

17    individual defendants, defendants move to dismiss all claims based on lack of jurisdiction and

18    failure to state a claim or, in the alternative, move to transfer venue to the District of Delaware.

19    For the foregoing reasons, the court GRANTS the motion to dismiss in part, DENIES it in part,

20    and DENIES the motion to transfer venue.

21    I.      BACKGROUND

22              The First Amended Complaint alleges that in February 2018, defendant Randle

23    Roper asked plaintiff to participate in a new business venture, Vacaya LLC ("Vacaya"), which

24    was to produce and sell LGBT cruises and resort vacations.  First Am. Compl. ("FAC") ¶¶ 13, 20,

25    ECF No. 14.  Defendants Patrick Gunn, John Finen and Tracy Terrill were also equity partners in

26    the venture.  *Id.* ¶ 19.  In April 2018, and over the course of several months, plaintiff alleges

27    defendants made several false promises and assurances to him that induced him to invest in the

28

1

company on the belief that he would later be made an equity partner in exchange for his efforts. *See id.* ¶¶ 20, 22, 28, 51.  For example, plaintiff alleges that, in an April 2018 email, defendants Roper and Finen misrepresented their industry expertise and provided plaintiff with an investment prospectus that artificially inflated the projected revenue of the company.  *See id.* ¶¶ 22–23. Plaintiff alleges defendants also sent this same prospectus to a third party, Mr. McGanal, and thereby induced him to invest $100,000 in Vacaya.  *Id.* ¶ 24.  Further, plaintiff alleges Finen sent him emails on June 18 and December 30, 2018, and two separate emails on February 25, 2019, making repeated statements that plaintiff's contributions to the company would be compensated by making him an equity partner with interests proportional to those contributions.  *See id.* ¶¶ 26, 34, 36.

Beginning in the summer of 2018, plaintiff invested substantial time and expense in support of promotional advertising for Vacaya, acting as the company's Director of Sales.  *Id.* ¶ 30.  In May 2019, the individual defendants voted to make plaintiff a partner in Vacaya, but with only ten percent equity vesting over the course of four years, and with various contingencies, which plaintiff alleges fell short of the "equal equity partnership" he was promised.  *Id.* ¶ 39.

In August 2018, Atlantis, a provider of LGBT cruises and travel and defendant Roper's former employer, sued defendants Roper, Gunn and Vacaya in Los Angeles County Superior Court, Case No. BC716072, and obtained a preliminary injunction against defendants' continued use of "confidential information and trade secrets belonging to Atlantis" for the benefit of Vacaya.  *Id.* ¶ 43.  Plaintiff alleges defendant Roper denied liability in the Atlantis lawsuit and that defendants Terrill and Finen agreed to indemnify plaintiff and Vacaya against costs associated with the Atlantis lawsuit in an effort to induce plaintiff to continue investing in Vacaya.  *See id.* ¶¶ 44, 46.  Plaintiff alleges these assurances later proved to be false.  *Id.*

In November 2019, defendants suspended plaintiff from the company, citing recent allegations of harassment that arose from plaintiff's personal trip to South Africa with a third party.  *Id.* ¶¶ 53–54.  Plaintiff alleges defendants suspended plaintiff from the company under false pretenses "to prevent [him] from demanding his rights to a meeting of Vacaya of January 1, 2020, at which time amendments of the operating agreement could be determined by a

1   simple majority vote, rather than the supermajority required through the end of December 2019."

2   *Id.* ¶ 57.

3          On March 26, 2020, plaintiff brought the instant suit against individual defendants

4   Roper, Gunn, Finen and Terrill in his capacity as trustee of the Terrill Living Trust, as well as

5   Vacaya LLC.  ECF No. 1.  On May 7, 2020, plaintiff filed the operative first amended complaint

6   alleging (1) racketeering in violation of 18 U.S.C. § 1962(c) against all defendants; (2) conspiracy

7   to racketeer in violation of 18 U.S.C. § 1962(d) against all defendants; (3) intentional

8   misrepresentation against all defendants; (4) negligent misrepresentation against all defendants;

9   (5) promissory fraud against all defendants; (6) breach of fiduciary duties against all defendants;

10  (7) constructive fraud against the individual defendants; (8) breach of contract against all

11  defendants; and (9) unlawful business practices against all defendants.  *See generally* FAC.

12         On May 21, 2020, defendants moved to dismiss pursuant to Rule 9(b) and Rule

13  12(b)(1), (2), (3) and (6) or, in the alternative, to transfer venue to the District of Delaware based

14  on 28 U.S.C. § 1404(a), arguing: (1) the court lacks subject matter jurisdiction over plaintiff's

15  non-federal causes of action; (2) the court lacks personal jurisdiction over defendant Vacaya,

16  LLC and defendants Finen, Roper and Terrill; and (3) venue is improper such that the case should

17  be dismissed or transferred to the District of Delaware.  Mot., ECF No. 15, at 2.   Plaintiff

18  opposes  the motion,  Opp'n, ECF No. 18, and defendants have filed a reply, Reply, ECF No. 19.

19  On June 26, 2020, the court heard oral argument on the motion via videoconference.  Counsel

20  Thomas Barth appeared for plaintiff; counsel Todd Brooks and Aaron Nichols appeared for

21  defendants.  ECF No. 20.  The court submitted the motion and resolves it here.

22  II.     MOTION TO DISMISS

23         A.      Legal Standard

24         Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may move to

25  dismiss a complaint for "failure to state a claim upon which relief can be granted."  A court may

26  dismiss "based on the lack of a cognizable legal theory or the absence of sufficient facts alleged

27  under a cognizable legal theory."  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir.

28  1990) (citation omitted).

1      Although a complaint need contain only "a short and plain statement of the claim

2  showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), in order to survive a motion

3  to dismiss this short and plain statement "must contain sufficient factual matter . . . to 'state a

4  claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting

5  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A complaint must include something

6  more than "an unadorned, the-defendant-unlawfully-harmed-me accusation" or "labels and

7  conclusions' or 'a formulaic recitation of the elements of a cause of action." *Id.* (quoting

8  *Twombly*, 550 U.S. at 555).  Determining whether a complaint will survive a motion to dismiss

9  for failure to state a claim is a "context-specific task that requires the reviewing court to draw on

10  its judicial experience and common sense." *Id.* at 679.  Ultimately, the inquiry focuses on the

11  interplay between the factual allegations of the complaint and the dispositive issues of law in the

12  action.  *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

13      In making this context-specific evaluation, this court must construe the complaint

14  in the light most favorable to the plaintiff and accept as true the factual allegations of the

15  complaint.  *Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007).  This rule does not apply to "'a legal

16  conclusion couched as a factual allegation,'" *Papasan v. Allain*, 478 U.S. 265, 286 (1986) *quoted

17  in Twombly*, 550 U.S. at 555, nor to "allegations that contradict matters properly subject to

18  judicial notice" or to material attached to or incorporated by reference into the complaint.

19  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988-89 (9th Cir. 2001), *as amended on denial

20  of rehearing at* 275 F.3d 1187 (9th Cir. 2001).  A court's consideration of documents attached to

21  a complaint or incorporated by reference or matter of judicial notice will not convert a motion to

22  dismiss into a motion for summary judgment.   *United States v. Ritchie*, 342 F.3d 903, 907-08

23  (9th Cir. 2003); *Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995); *compare

24  Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002) (noting that even

25  though court may look beyond pleadings on motion to dismiss, generally court is limited to face

26  of the complaint on 12(b)(6) motion).

27  /////

28  /////

4

1    B.    Discussion

2            1.    Jurisdictional Arguments

3                    a.    Personal Jurisdiction

4            Defendant argues the court lacks personal jurisdiction over defendants Vacaya,

5    Roper, Terrill and Finen,[1] who all reside or have their principal place of business outside of

6    California.  Mot. at 18; *see also* FAC ¶¶ 4–8.  Plaintiff counters these defendants are subject to

7    specific jurisdiction based on their communications with plaintiff in California.  Opp'n at 19.

8            A court may exercise specific personal jurisdiction over a non-resident defendant

9    whose "minimum contacts" with the forum state are "sufficient" in that they relate to the claims

10   made in a case.  *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990).  The minimum contacts

11   inquiry focuses "on the relationship among the defendant, the forum, and the litigation."  *Walden*

12   *v. Fiore*, 571 U.S. 277, 284 (2014) (citation and quotation marks omitted).  The Ninth Circuit has

13   established a three-prong test for determining whether the plaintiff has alleged sufficient

14   "minimum contacts":

15           (1) The non-resident defendant must purposefully direct his activities
             or consummate some transaction with the forum or resident thereof;
16           or perform some act by which he purposefully avails himself of the
             privilege of conducting activities in the forum, thereby invoking the
17           benefits and protections of its laws;

18           (2) the claim must be one which arises out of or relates to the
             defendant's forum-related activities; and
19

20           (3) the exercise of jurisdiction must comport with fair play and
             substantial justice, i.e., it must be reasonable.

21   *Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015) (citing *Schwarzenegger v. Fred Martin*

22   *Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004)).  "The plaintiff has the burden of proving the first

23   two prongs of the test."  *Id.*  If the plaintiff succeeds in doing so, the burden shifts to the

24   defendant to "set forth a 'compelling case' that the exercise of jurisdiction would not be

25

26   _____

27           [1] The remaining defendant, Patrick Gunn, resides in California, and defendants do not
     dispute the court's personal jurisdiction over him in their motion to dismiss.  Mot. at 25 (citing
28   FAC ¶ 5).

1   reasonable." *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1076 (9th Cir. 2011)

2   (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476–78 (1985)).

3          Where, as here, the court makes the jurisdictional determination without an

4   evidentiary hearing, plaintiff "need only demonstrate facts that if true would support jurisdiction

5   over the defendant." *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995).  In particular, the

6   plaintiff must convince the court the defendants' "conduct and connection with the forum State"

7   is such that the defendants "should reasonably anticipate being haled into court there." *Sher*, 911

8   F.2d at 1361 (citing *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).  In

9   ruling on defendants' motion, uncontroverted allegations in the plaintiff's complaint must be

10   taken as true.  *Ochoa v. J.B. Martin & Sons Farms, Inc*., 287 F.3d 1182, 1187 (9th Cir. 2002).

11          When a plaintiff seeks to invoke specific personal jurisdiction, she must establish

12   jurisdiction for "each claim asserted against a defendant."  Picot, 780 F.3d at 1211

13   (quoting Action Embroidery Corp. v. Atl. Embroidery, Inc., 368 F.3d 1174, 1180 (9th Cir.

14   2004)).  If personal jurisdiction exists over one claim, but not others, the district court may

15   exercise pendent personal jurisdiction over any remaining claims that arise out of the same

16   "common nucleus of operative facts" as the claim for which jurisdiction exists.  *Id.*

17                              i.   Defendants Roper, Terrill and Finen

18          Plaintiff's fraud claims are primarily based on alleged communications by the

19   individual defendants to plaintiff.  First, plaintiff alleges that, in April 2018, defendants Roper

20   and Finen emailed him an investment prospectus containing false statements and intended to

21   induce plaintiff to invest in Vacaya.  *See* FAC ¶¶ 22–23 (describing Roper and Finen providing

22   investment packet "to plaintiff by email from outside of California" that included alleged false

23   statements).

24          Plaintiff next alleges that in May 2018, defendants Roper, Terrill and Finen

25   "communicated [with him] by telephone, text, email, and internal electronic communications" to

26   offer him an independent contractor agreement to compensate him for services on a monthly

27   basis; an offer plaintiff signed.  *Id.* ¶ 25.

28   /////

1       Finally, plaintiff alleges defendants Roper, Terrill and Finen communicated with

2   him by various means and made allegedly fraudulent promises regarding the future equity he

3   would receive in the company in exchange for his investments.  *See, e.g.*, *id.* ¶ 20 (alleging Roper,

4   in multiple telephone conversations with plaintiff, who was in California, promised plaintiff he

5   would be made a member with equity ownership in Vacaya); *id.* ¶ 26 ("[D]efendants Roper,

6   Terrill and Finen communicated with plaintiff by electronic means in approximately June 2018,

7   promising plaintiff that if he continued performing sales services for Vacaya without monthly

8   compensation, then the individual defendants would make plaintiff a member of Vacaya with

9   equity interest in the company . . . ."); *id.* ¶ 28 (regarding communications by defendants Terrill

10  and Finen); *id.* ¶ 38 (same).

11      Plaintiff submits a declaration stating that "[n]early all of the commitments made

12  by defendants to me, regarding recognition of the value of my investments of services, materials,

13  and substantial funds in Vacaya, were communicated, transmitted, or otherwise directed to me

14  while I was in California at my residence and company, located in Sacramento County."

15  Hodgson Decl. ¶ 6, ECF No. 18-1; *see also* FAC ¶ 3 ("Plaintiff is, and at all times relevant hereto

16  was, an individual residing in the County of Sacramento[.]").  The court considers the

17  communications described above to be aimed at California.  *Ballard*, 65 F.3d at 1498 (where

18  court does not hold evidentiary hearing, plaintiff need only make a "prima facie" case of

19  jurisdiction by "demonstrat[ing] facts that if true would support jurisdiction").[2]

20      These contacts are sufficient to establish specific personal jurisdiction over the

21  individual defendants with respect to plaintiff's fraud claims, based on defendants' expressly

22  aiming their communications at California by contracting with and inducing the investment of a

23  California resident.  *See Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1112 (9th Cir. 2002)

24  (finding "express aiming" where defendants alleged to have communicated directly with plaintiff

25  company's managers in forum state to induce them to enter into offending contractual

26  arrangement "with the specific intent to cause injury to [the company] by means of those very

27

28      [2] To further clarify this jurisdictional question, plaintiff may add the relevant facts from
    his declaration to any amended complaint.

communications"); *Trinchitella v. Am. Realty Partners, LLC*, No. 2:15-CV-02365-KJM-EFB, 2016 WL 4041319, at *6 (E.D. Cal. July 27, 2016) (finding purposeful availment where defendants engaged in "stream of correspondence" intended to solicit plaintiff's investments "through mail, email and phone calls" into forum state); *Felland v. Clifton*, 682 F.3d 665, 675 (7th Cir. 2012) (finding conduct "expressly aimed" at forum state where defendant's "myriad . . . communications" to plaintiff were part of an "ongoing scheme to perpetuate [the] initial fraud" that occurred elsewhere).

### ii.   Vacaya

Taken together, the allegations in the complaint provide that Roper, Terrill and Finen were agents of their business, Vacaya, when they made the communications described above.  Accordingly, for the same reasons, Vacaya is subject to specific personal jurisdiction in California based on plaintiff's fraud claims.  *MCSi, Inc. v. Woods*, No. C-02-02865 JF(RS), 2002 WL 32059741, at *2 (N.D. Cal. Oct. 7, 2002) (citing *Wells Fargo Co. V. Wells Fargo Express Co.*, 556 F.2d 406, 419 (9th Cir. 1977)).  Furthermore, according to plaintiff's declaration, defendant Vacaya sent the independent contractor agreement described above to plaintiff in Sacramento, California, where he signed it.  *See* Hodgson Decl. ¶ 4.

### iii.   Conclusion

For the foregoing reasons, the court finds defendant company Vacaya and individual defendants Roper, Terrill and Finen expressly aimed activities at California through their communications and contracting with plaintiff.

Furthermore, the claims arise out of these actions, because plaintiff alleges he would not have invested in Vacaya but for the correspondence and alleged misrepresentations. *See, e.g.*, FAC ¶ 23 ("[P]laintiff reasonably relied on the statements and financial data contained in the Vacaya investment prospectus to decide to invest in Vacaya in various ways."); *id.* ¶ 25 ("Based on defendants' statements, which plaintiff did not know to be false, and on which plaintiff reasonably relied, plaintiff signed an independent contractor agreement in May 2018[.]"); *id.* ¶ 27 ("[P]laintiff reasonably relied on the false statements to decide to continue providing valuable services to defendants and Vacaya without monthly compensation and entirely based on

1  defendants' promises that the value of plaintiff's services would become part of his equity

2  ownership of the company, equal to other members."); *see also Trinchitella*, 2016 WL 4041319 at

3  *6.  The first two prongs of the specific jurisdiction test are met.  Because defendant has not

4  presented a "compelling case that the presence of some other considerations would render

5  jurisdiction unreasonable," *Ballard*, 65 F.3d at 1500 (quoting *Burger King Corp.* 471 U.S. at

6  477), the court finds it has specific jurisdiction over defendants for the purposes of adjudicating

7  plaintiff's fraud claims.  *See Burger King*, 471 U.S at 473 ("[I]t is presumptively not

8  unreasonable to require him to submit to the burdens of litigation in that forum as well.").

9        Finally, all of the claims in plaintiff's complaint arise out of the same "common

10  nucleus of operative facts," *Picot*, 780 F.3d at 1211, namely that the individual defendants

11  defrauded plaintiff when they represented to plaintiff he would receive certain benefits, including

12  an equity partnership in Vacaya, in exchange for his investment in the company.  *See, e.g.*, FAC

13  ¶ 51.  To the extent necessary, the court therefore exercises pendent personal jurisdiction over the

14  remaining claims.

15        Accordingly, defendants' motion to dismiss based on lack of personal jurisdiction

16  is DENIED.

17              b.      Whether Venue is Proper

18        If venue is improper, a district court may dismiss, or if it is in the interest of

19  justice, transfer a case "to any district or division in which it could have been brought[.]"

20  28 U.S.C. § 1406(a).  If venue is challenged, plaintiff has the burden of showing the venue is

21  proper in the district where he has brought suit.  *Piedmont Label Co. v. Sun Garden Packing Co.*,

22  598 F.2d 491, 496 (1979).  When  jurisdiction is not based on diversity, as here, 28 U.S.C.

23  § 1391(b)(2) provides that venue is proper in "a judicial district in which a substantial part of the

24  events or omissions giving rise to the claim occurred, or a substantial part of property that is the

25  subject of the action is situated[.]"  28 U.S.C. § 1391(b)(2).

26        Defendants argue a "substantial part of the events or omissions giving rise to the

27  claim" did not occur in California because the dispute is primarily "over the affairs of a Delaware

28  limited liability company and Plaintiff's former membership interest in that Company."  Mot. at

26.  However, all of plaintiff's claims primarily arise out of allegedly fraudulent communications made by individual defendants from outside of California to defendant, while he was residing in Sacramento, California.  *See, e.g.*, FAC ¶¶ 22–23.  Accordingly, venue is proper in the Eastern District of California because it is "a judicial district in which a substantial part of the events or omissions giving rise to the claim[s] occurred," 28 U.S.C. § 1391(b)(2).  *See Masterson v. Swan Range Log Homes, LLC*, No. 06-CV-163-S-EJL, 2007 WL 625387, at *3 (D. Idaho Feb. 23, 2007) ("[C]ourts have considered letters, faxes, emails, and telephone calls transmitted from or received in a district during negotiation and execution of a contract to be substantial events for venue purposes." (citation omitted)); *Halcyon Biomedical, Inc. v. Glatt Air Techniques, Inc.*, No. CV H-19-690, 2019 WL 2420232, at *8 (S.D. Tex. June 10, 2019) ("The Southern District of Texas, where Halcyon received the emails and phone calls containing the alleged misrepresentations, is a proper venue for the fraud claims.").

Having found venue is proper here under the general venue statute, the court need not address whether venue is proper under the RICO Act's supplementary special venue provision, 18 U.S.C. § 1965(a).  *See Reddy v. MedQuist, Inc.*, No. CIV09CV1325-L(BLM), 2010 WL 816154, at *5 (S.D. Cal. Mar. 5, 2010) ("As the RICO venue provision supplements the general venue provision of section 1391(b), venue in this district is proper if it is proper under any option provided in either statute.").

2.      Federal Claims

Defendants challenge plaintiff's RICO claims, brought under 18 U.S.C. § 1962(c) (d), arguing that plaintiff (1) lacks standing, and (2) fails to adequately plead the requisite elements under RICO.  *See* Mot. at 14–16.  The court analyzes the two arguments in turn.

a.      RICO Claims Generally

Under 18 U.S.C. § 1962(c), it is unlawful "for any person employed by or associated with any enterprise . . . to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity."  18 U.S.C. § 1962(c).  "Racketeering activity" is defined as any number of "generically specified criminal acts as well as

10

1    the commission of one of a number of listed predicate offenses." *Sosa v. Directv, Inc.*, 437 F.3d

2    923, 939 (9th Cir. 2006). Although § 1962 pertains to criminal behavior, a plaintiff may

3    nonetheless seek civil remedies for RICO violations if he has been "injured in his business or

4    property by reason of a violation of section 1962 . . . ." 18 U.S.C. § 1964(c).

5           The elements of a RICO claim are "(1) conduct; (2) of an enterprise; (3) through a

6    pattern (4) of racketeering activity (known as 'predicate acts'); (5) causing injury to the plaintiff's

7    'business or property.'" *Grimmett v. Brown*, 75 F.3d 506, 510 (9th Cir. 1996). A "pattern of

8    racketeering activity" requires at least two predicate acts. 18 U.S.C. § 1961(1), (5), (6). The fifth

9    element has two subparts: the plaintiff must show that the injury was proximately caused by the

10   conduct and that he has suffered a concrete financial loss. *Chaset v. Fleer/Skybox Intern., LP*,

11   300 F.3d 1083, 1086 (9th Cir. 2002).

12          In addition, under §§ 1962(d) and 1964(c), a person may be civilly liable if he

13   conspired to violate any of the subsections of § 1962. *Beck v. Prupis*, 529 U.S. 494, 500 (2000).

14   A RICO conspiracy presupposes the existence of a substantive violation of RICO, but a

15   conspirator may be liable even if he does not commit or agree to commit "the two or more

16   predicate acts requisite to the underlying offense." *Salinas v. United States*, 522 U.S. 52, 65–66

17   (1997).

18                      b.      Plaintiff's Standing to Bring RICO Claims

19          Defendants argue plaintiff lacks standing to bring RICO claims because his alleged

20   injuries, his suspension and termination from the company, were a result of his own conduct, not

21   any fraudulent representations by defendant. Mot. at 14 (citing *Elec. Props. E., LLC v. Marcus &*

22   *Millichap Co.*, 751 F.3d 990, 997 (9th Cir. 2014) (explaining RICO violation must be "proximate

23   cause of harm to the victim")). This argument misstates plaintiff's theory of the case. Put

24   simply, plaintiff alleges he was injured when defendants failed to deliver on their promise of

25   making him an equity partner in Vacaya after inducing him to invest time and money into the

26   business. Further, whether plaintiff's suspension from the company was the result of his own

27   actions or the result of a nefarious scheme by defendants is a factual question not readily

28   discerned on the face of the complaint. Defendants' argument regarding injury is unavailing.

1        c.        Failure to State RICO Claims

2        Defendants argue plaintiff's RICO claims must be dismissed for failure to plead

3   four essential elements.

4        First, defendants argue plaintiff  fails to plead actionable fraud because he alleges

5   only "statements of future intent."  Mot. at 14.  The court addresses this argument in the section

6   on plaintiff's state law fraud claims, below.

7        Second, defendants argue plaintiff fails to state a RICO claim because he was the

8   only victim of the alleged wire fraud, and RICO claims require more than a scheme to defraud

9   one individual.  *Id.* at 16 (citing *Malhotra v. Copa de Ora Realty, LLC*, 676 F. App'x 666, 668

10  (9th Cir. 2017) (explaining plaintiffs lack viable RICO claim based on allegations defendants

11  participated in "scheme [that] had the singular purpose of fraudulently inducing [the plaintiff] to

12  transfer funds to," a company, "all predicate acts occur[ed] in a short time frame" and "had no

13  victims other than [the plaintiffs]").  This argument lacks merit because plaintiff does allege one

14  other victim of similar fraudulent statements by defendants: Mr. McGanal.  FAC ¶¶ 34–35.

15       Third, defendants argue plaintiff fails to allege a "pattern of racketeering" that

16  requires "defendants committed at least two . . . predicate acts."  Mot. at 14–15 (citing *Comm. to*

17  *Protect our Agric. Water v. Occidental Oil & Gas Corp.*, 235 F. Supp. 3d 1132, 1177 (E.D. Cal.

18  2017)).  Plaintiff contends he has alleged repeated predicate acts occurring May 2018 through the

19  summer of 2019, which consist of "the transmittal of false financial data concerning the company,

20  false statements about defendant Roper's expertise, false commitments of full equity ownership

21  commensurate with plaintiff's investments, false promises of enforcing indemnity obligations

22  against defendants Roper and Gunn, among other acts."  Opp'n at 18.

23       Defendants challenge whether the communications are "related" such that they can

24  be considered together in the continuity analysis.  *See* Mot. at 15 ("The alleged 'fraud' concerning

25  Plaintiff's membership in the Company has nothing to do with the alleged 'fraud' concerning the

26  Company's purported 'theft of trade secrets' from Atlantis.").  "Relatedness" requires the acts

27  have the "same or similar purposes [and] results."  *Religious Tech. Ctr. v. Wollersheim*, 971 F.2d

28  364, 366 (9th Cir. 1992) (citation omitted).  Defendants are correct that the alleged predicate act

12

1   of "theft of trade secrets" does not meet this relatedness requirement.  With the exception of the

2   communications described below, plaintiff does not allege any of the acts related to the Atlantis

3   lawsuit were for the purpose, or had the result, of inducing plaintiff to invest in Vacaya, which

4   was the alleged purpose and result of the other predicate acts.  *See, e.g.*, FAC ¶ 25.

5           Any alleged communications related to the Atlantis lawsuit that have the "common

6   purpose" of inducing plaintiff to invest in Vacaya and are therefore "related" to the other

7   predicate acts are undated in the complaint.  *See, e.g.*, *id.* ¶ 46 ("[D]efendants made the false

8   promises to compel indemnity by Roper and Gunn for the purpose of inducing plaintiff to

9   continue investing his time and the resources of his company, Phenix, for their benefit and the

10  benefit of the Vacaya enterprise.  Plaintiff reasonably relied on defendants' promises . . . .").

11  Therefore, these communications cannot establish continuity for the purpose of saving plaintiff's

12  RICO claim.

13          Given this conclusion, the court further finds plaintiff's allegations do not meet the

14  minimum requirements for "continuity."  Although he alleges "at least two acts of racketeering

15  activity" within a 10–year period, 18 U.S.C. § 1961(5), plaintiff fails to allege a pattern of

16  predicate acts that went on for at least one year, *see Wollersheim*, 971 F.2d at 366–67 ("We have

17  found no case in which a court has held the requirement to be satisfied by a pattern of activity

18  lasting less than a year.") (collecting cases).  The alleged wire fraud, consisting of defendants'

19  false statements or promises intended to induce plaintiff's investment, occurred between April

20  2018, FAC ¶ 22 (Roper and Finen send fraudulent investment packet) and roughly August 2018,

21  *id.* ¶¶ 43 (Atlantis initiates lawsuit), 45–46 (defendants' false promises to enforce indemnity

22  obligations, occurring after Atlantis lawsuit commenced).  This period is insufficient to show a

23  pattern of racketeering required to plead a RICO claim.  *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S.

24  229, 242 (1989) ("A party alleging a RICO violation may demonstrate continuity over a closed

25  period by proving a series of related predicates extending over a substantial period of time.

26  Predicate acts extending over a few weeks or months and threatening no future criminal conduct

27  do not satisfy this requirement.").

28  /////

1    Defendants also argue the court should dismiss plaintiff's RICO claims against

2  Vacaya because it is not a proper defendant for RICO violations, as it cannot be culpable as both

3  an enterprise and a participant.  Mot. at 16 n.3.  Plaintiff concedes defendant Vacaya is not a

4  proper defendant for RICO violations.  Opp'n at 19 n.1.

5    Accordingly, plaintiff's first two claims are DISMISSED.  Despite the fact

6  plaintiff has amended his complaint once already, the court GRANTS leave to amend claims one

7  and two as to the individual defendants, given the representations of plaintiff's counsel at hearing

8  and this Circuit's liberal standard with respect to leave to amend on an initial motion to dismiss.

9  *See Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990).  Claims one

10  and two against Vacaya only are DISMISSED without leave to amend.[3]

11    d.    Unlawful Business Practices (Claim Nine)

12    Defendants also challenge plaintiff's claim for unlawful business practices, based

13  on the following allegations:

14    The policies and provisions of the limited liability agreement and
    non-disclosure agreement, on which defendants based their adverse
15    action against plaintiff, are unfair labor practices in violation of [the
    National Labor Relations Act], Title 29, United States Code
16    158(a)(1), as they reasonably tend to chill, interfere with, restrain, or
    coerce employees in the exercise of rights guaranteed in Title 29,
17    United States Code Section 157.

18  FAC ¶ 111.  Plaintiff also brings a derivative claim under California Business and Professions

19  Code section 17200.  *Id.* ¶ 112 ("As a violation of Title 29, United States Code Section 158(a)(1),

20  the policies and provisions of the limited liability agreement and non-disclosure agreement, . . .

21  are an unlawful business practice, under the provisions of California Business and Professions

22  Code Section 17200.").

23    Defendants argue the provisions of the National Labor Relations Act "have no

24  import whatsoever" on plaintiff's factual allegations.  Mot. at 16–17.  Defendants are correct that

25  plaintiff does not sufficiently plead a right guaranteed by 29 U.S.C. § 157 with which the policies

26

27    [3] Given this conclusion, the court need not reach defendants' argument that defendants
    Roper and Gunn, specifically, should be dismissed, because they "did not 'promise' Plaintiff
28  anything more than he received."  Mot. at 17 n.3 (citing FAC ¶ 36).

1    and provisions of the limited liability agreement and non-disclosure agreement interfered,

2    requiring defendants to guess at the factual underpinning of plaintiff's claim.  *See* FAC ¶¶ 109–

3    113 (Ninth Claim for Relief).  Accordingly, defendant's ninth claim for unlawful business

4    practices is DISMISSED with leave to amend.  *See Morongo Band of Mission Indians*, 893 F.2d

5    at 1079.

6                        3.       STATE-LAW CLAIMS

7                            a.       California Law Applies

8                Assuming plaintiff is able to successfully plead a federal claim in his amended

9    complaint, the court may exercise supplemental jurisdiction over the pendent state law claims and

10   in doing so would apply substantive law of the forum state, including the state's choice-of-law

11   rules.  *See Chin v. Chrysler LLC*, 538 F.3d 272, 278 (3d Cir. 2008) (citing *Klaxon Co. v. Stentor*

12   *Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941*), superseded by statute on other grounds*).  Defendants

13   argue Delaware law, not California law, should apply to all of plaintiff's state law claims because:

14   (1) "Delaware has the most significant relationship to *both* the occurrences and the parties," and

15   (2) "[t]he laws of the State of Delaware govern the . . . construction and interpretation" of the

16   Operating Agreement, pursuant to the agreement's choice-of-law provision.  Mot. at 17 n.4

17   (emphasis in original) (citing FAC, Ex. A (Operating Agreement) § 11.8[4]).

18                As the court concludes below, in its discussion of defendants' motion to transfer

19   venue, Delaware does not necessarily have the most significant relationship to the factual

20   allegations supporting this case, because plaintiff received a substantial portion of the alleged

21   fraudulent communications in California.

22                As to whether the Operating Agreement's choice-of-law provision applies to

23   plaintiff's state law claims, under California law, the scope of a contract's choice-of-law clause is

24   determined by the body of law identified in the agreement, unless the agreement specifies a

---

26   [4] "The laws of the State of Delaware shall govern the validity of this Agreement, the
     construction and interpretation of its terms, and organization and internal affairs of the Company
27   and the limited liability of the Members."  Defendants do not argue that the claims fall under the
     "organization and internal affairs of the Company" such that Delaware law should apply, so the
28   court does not consider that question.  *See* Mot. at 17 n.4.

1    different scope.  *Washington Mutual Bank, FA v. Superior Court*, 24 Cal. 4th 906, 916 & n.3

2    (2001).  California courts broadly construe a contractual choice-of-law provision, particularly

3    when two sophisticated commercial parties agree to such a clause.  *Id.*  As a general rule, the

4    parties' choice will apply to all claims arising from or related to the contract, including tortious

5    breaches of duties emanating from the agreement or the legal relationships it creates.  *Nedlloyd*

6    *Lines B.V. v. Superior Court*, 3 Cal. 4th 459, 470 (1992).

7              Plaintiff does not argue California law applies to his breach of contract claim,

8    which clearly arises out of the Operating Agreement and is accordingly governed by Delaware

9    law.  However, the remaining claims do not appear to have anything to do with the "construction

10   and interpretation" of the operating agreement, nor do they arise out of it.  In fact, as plaintiff

11   points out, many of the alleged fraudulent communications occurred prior to the parties'

12   executing the Operating Agreement.  *See* Opp'n at 22. Plaintiff's fiduciary duty claim based on a

13   joint venture relationship may arise out of the Operating Agreement, but the court need not decide

14   this issue, as discussed below.  *See* FAC ¶ 96 (describing joint venture).

15             Accordingly, for the purposes of this motion, the court applies California law to

16   plaintiff's state claims, with the exception of the breach of contract claim and breach of fiduciary

17   duty claim.

18                      b.      <u>Intentional and Negligent Misrepresentation (Claims Three and</u>

19                              <u>Four)</u>

20             Defendants argue plaintiff's intentional and negligent misrepresentation claims fail

21   because plaintiff relies on defendants' statements promising future conduct. Mot. at 20–21. "The

22   elements of a cause of action for intentional misrepresentation are (1) a misrepresentation,

23   (2) with knowledge of its falsity, (3) with the intent to induce another's reliance on the

24   misrepresentation, (4) actual and justifiable reliance, and (5) resulting damage.  *Daniels v. Select*

25   *Portfolio Servicing, Inc.*, 246 Cal. App. 4th 1150, 1166 (2016) (citation omitted).  "The elements

26   of a claim for negligent misrepresentation are nearly identical" except defendant need not have

27   knowledge of the statement's falsity, only "the absence of reasonable grounds for believing the

28   misrepresentation to be true instead."  *Id.* (citations omitted).

1        As the basis for plaintiff's intentional and negligent misrepresentation claims,

2   plaintiff points to defendant Roper's misrepresentation that he had expertise in maritime laws.

3   Opp'n at 22–23.  Defendants argue this statement is nonactionable "puffery."  Mot at 22.  "[T]he

4   difference between a statement of fact and mere puffery rests in the specificity or generality of the

5   claim."  *Newcal Indus., Inc. v. IKON Office Solutions*, 513 F.3d 1038, 1053 (9th Cir. 2008)

6   (citation omitted); *Stickrath v. Globalstar, Inc.*, 527 F. Supp. 2d 992, 998–99 (N.D. Cal. Sept. 25,

7   2007) (claim that product used brand-name components was not puffery because it was factual

8   representation that could be proved or disproved during discovery).  To constitute an affirmative

9   misrepresentation, a statement must make a "specific and measurable claim, capable of being

10  proved false or of being reasonably interpreted as a statement of objective fact."  *Coastal Abstract*

11  *Serv. v. First Am. Title Ins. Co.*, 173 F.3d 725, 731 (9th Cir. 1999).  As defendants argue, claims

12  about expertise are generally considered nonactionable "puffery."  *See, e.g.*, *Highlands Ins. Co. v.*

13  *PRG Brokerage, Inc.*, No. 01 CIV. 2272 (GBD), 2004 WL 35439, at *3 (S.D.N.Y. Jan. 6, 2004)

14  ("[T]o the extent that defendants made statements that they had expertise in the field of livery car

15  insurance, this again is nothing more than puffery, and is not actionable.").  To the extent

16  plaintiff's fraud claims rely on defendant Roper's representation of expertise in maritime law, the

17  claims are DISMISSED, but with leave to amend.

18        A representation generally is not actionable unless it is about "past or existing

19  facts."  *Stockton Mortg., Inc. v. Tope*, 233 Cal. App. 4th 437, 458 (2014).  However, a "false

20  promise to perform" can support an intentional misrepresentation claim.  *Starbuzz Tobacco, Inc.*

21  *v. Gold Star Tobacco, Inc.*, No. SACV1900408JVSDFMX, 2019 WL 6888044, at *6 (C.D. Cal.

22  July 29, 2019) (explaining distinction in California law between intentional and negligent

23  misrepresentation).  Defendants' arguments regarding plaintiff's intentional misrepresentation

24  premised on defendants' false promises are therefore unsuccessful.  However, as explained in the

25  subsequent discussion on plaintiff's promissory fraud claims, plaintiff has not pled sufficient

26  information to show defendants' promises were false.  *See Smith v. Allstate Ins. Co.*, 160 F. Supp.

27  2d 1150, 1152 (S.D. Cal. 2001) (under Rule 9(b) "plaintiff must plead facts explaining why the

28  /////

1   statement was false when it was made" (citing *In re GlenFed, Inc., Sec. Lit.*, 42 F.3d 1541, 1547–

2   48 (9th Cir.1994))).  As such, plaintiff's third claim must be DISMISSED.

3          Plaintiff's negligent misrepresentation claim, by contrast, must be based on "the

4   misrepresentation of a past or existing material fact, not promises regarding future events."

5   *Ventimiglia v. Wells Fargo Bank, N.A.,* No. CIV. 2:13-00953 WBS, 2013 WL 3367330, at *4

6   (E.D. Cal. July 5, 2013) (internal quotation marks and citations omitted).  Plaintiff has not pled

7   that defendants' misrepresented a past or existing fact.  For example, plaintiff has not sufficiently

8   shown the omission of operating costs in the financial projections defendants sent plaintiff,

9   rendered false a past or existing fact.  As such, plaintiff's claim for negligent misrepresentation is

10  DISMISSED.

11              c.     Promissory and Constructive Fraud (Claims Five and Seven)

12         In a similar vein, and as signaled above, defendants primarily argue plaintiff's

13  promissory and constructive fraud claims do not state a cognizable claim, because plaintiff has

14  not pleaded "particularized facts that allow the Court to infer that, at the time the promise was

15  made, the speaker had no intention of keeping it."  Mot. at 23 (quoting *Dunn v. FastMed Urgent*

16  *Care, P.C.*, No. 2018-0934, 2019 WL 4131010, at *8 (Del. Ch. Aug. 30, 2019)).

17         "Promissory fraud is a subspecies of fraud.  A plaintiff asserting a promissory

18  fraud claim must plead and prove that the defendant made a promise to him that it had no

19  intention of performing," and "nonperformance alone" is insufficient.  *UMG Recordings, Inc. v.*

20  *Glob. Eagle Entm't, Inc.*, 117 F. Supp. 3d 1092, 1109 (C.D. Cal. 2015) (citations omitted).

21  Plaintiff "must plead facts explaining why the statement was false when it was made."  *Smith v.*

22  *Allstate Ins. Co.*, 160 F. Supp. 2d 1150, 1152–53 (S.D. Cal. 2001).  A plaintiff can do so, for

23  example, "by pointing to inconsistent contemporaneous statements or information which was

24  made by or available to the defendant; [or] later statements made by the defendant along the lines

25  of 'I knew it all along.'"  *Id.*  Plaintiff fails to do so here, alleging only "plaintiff is informed and

26  believes," that defendants knew their statements were false, FAC ¶ 25, and "[a]t the time

27  defendants made the promises and assurances to plaintiff, defendants had no intention of

28  /////

1    performing them," *id.* ¶ 90; *see also id.* ¶¶ 38, 39.  Accordingly, plaintiff's promissory fraud

2    claim is DISMISSED with leave to amend.

3             However, the same argument is not applicable to plaintiff's constructive fraud

4    claim, which only requires plaintiff to plead: "(1) the existence of a fiduciary or confidential

5    relationship; (2) nondisclosure; (3) reliance; (4) and resulting injury."  *Hardisty v. Moore*,

6    6 F. Supp. 3d 1044, 1062 (S.D. Cal. 2014).  Defendants fail to explain why plaintiff's allegations

7    regarding defendants' failure to disclose the operating costs in the investment prospectus are

8    insufficient to state a constructive fraud claim.  *See* Mot. at 23–24 (arguing constructive fraud

9    cannot be based upon allegations of "future conduct") (citing *Rosenbaum v. White*, 692 F.3d 593,

10   606 (7th Cir. 2012) (affirming dismissal of constructive fraud claim for failure to demonstrate

11   existence of attorney-client relationship); *Nelson v. Publishers Circulation Fulfillment, Inc.*, No.

12   11 Civ. 1182(TPG), 2012 WL 760335, at *8 (S.D.N.Y. Mar. 7, 2012) (analyzing constructive

13   fraud claim under New York law)).  Accordingly, the motion to dismiss claim six is DENIED.

14                      d.        Breach of Fiduciary Duty (Claim Six)

15           Defendants argue plaintiff's breach of fiduciary duty claim fails because

16   (1) California law does not apply, (2) defendants are exculpated from liability for terminating

17   plaintiff because defendant violated the Operating Agreement, and (3) plaintiff's allegations are

18   conclusory.  Mot. at 6.

19           The court need not decide whether California law applies to this claim, nor

20   whether plaintiff violated the Operating Agreement, because the claim is not adequately pled to

21   put defendants on notice of the claim's bases.  Plaintiff states only that "[b]y the actions of

22   defendants previously alleged herein, defendants breached their duty of care . . . ."  *See* FAC ¶ 97.

23   Accordingly, this claim is DISMISSED with leave to amend.

24                      e.        Breach of Contract (Claim Eight)

25           Finally, defendants argue plaintiff's claim for breach of contract should be

26   dismissed because it is conclusory and plaintiff cannot state a plausible claim for relief because

27   plaintiff has conceded multiple "significant infractions that purportedly resulted in his removal

28   from the Company."  Mot. at 25.  At the least, defendants argue in a footnote the court should

                                                   19

1    dismiss this claim as to the individual defendants because plaintiff does not allege they had any

2    contract with plaintiff.  *Id.* at 25 n.11.

3            Plaintiff bases his contract claim on defendants' suspending him from the

4    company in violation of the parties' "limited liability agreement" (the "Operating Agreement")

5    and "non-disclosure agreement."  *See* FAC ¶¶105–07.  Plaintiff does allege he and all defendants

6    entered into the two relevant contracts, *id.* ¶ 105, and his failure to allege which provision of the

7    agreement defendants breached is not sufficient to dismiss the claim, *see Otani v. State Farm Fire*

8    *& Cas. Co.*, 117 F.3d 1425 (9th Cir. 1997) (reversing dismissal of contract claim based on

9    complaint's failure to identify specific contract provision).  Plaintiff also discusses the actions

10    that allegedly constitute a breach of those contracts.  *See* FAC ¶¶105–07.  Accordingly,

11    defendants' arguments regarding plaintiff's breach of contract claim are unavailing and the

12    motion to dismiss the contract claim is DENIED.

13    III.     <u>MOTION TO TRANSFER</u>

14        A.    <u>Legal Standard</u>

15            "For the convenience of parties and witnesses, in the interest of justice, a district

16    court may transfer any civil action to any other district or division where it might have been

17    brought[.]"  28 U.S.C. § 1404(a).  "Section 1404(a) is intended to place discretion in the district

18    court to adjudicate motions for transfer according to an 'individualized, case-by-case

19    consideration of convenience and fairness.'"  *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29

20    (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964), *superseded by statute on other*

21    *grounds*).  In evaluating a motion to transfer venue, the court will often consider the following

22    public and private factors: "(1) plaintiff's choice of forum; (2) the convenience of the parties;

23    (3) the convenience of the witnesses; (4) the location of books and records; (5) which forum's law

24    applies; (6) the interests of justice; and (7) administrative considerations."  *Rubio v. Monsanto*

25    *Co.*, 181 F. Supp. 3d 746, 759 (C.D. Cal. 2016) (citing 15 Charles A. Wright, Arthur R. Miller,

26    *Federal Practice and Procedure*, §§ 3841–55 (2007)).  In the Ninth Circuit, courts will also

27    consider the following factors:

28    /////

(1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof.

*Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498–99 (9th Cir. 2000).  The moving party bears the burden of showing transfer is appropriate.  *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979)), *opinion modified*, 828 F.2d 1445 (9th Cir. 1987).  In considering whether to transfer venue, the court may consider facts outside the pleadings, including declarations.  *Cadenasso v. Metro. Life Ins. Co.*, No. 13-CV-05491-JST, 2014 WL 1510853, at *2 n.2 (N.D. Cal. Apr. 15, 2014).

      B.    <u>Discussion</u>

Defendant argues, in the alternative, the court should transfer venue to the District of Delaware under 28 U.S.C. § 1404(a).

Defendants do not meet their burden of showing transfer is appropriate here.  "Great weight is generally accorded plaintiff's choice of forum," and defendants do not show how the District of Delaware is more convenient to the parties or to any potential witnesses, who all appear to reside elsewhere, see FAC ¶¶ 3–8, other than stating the individual defendants consent to personal jurisdiction there, Brooks Decl., Exs. 1–3 (declarations of defendants Finen, Roper and Terrill), ECF Nos. 15-3–15-5.  Even Vacaya, which provides the sole tie in this case to the District of Delaware as it is incorporated there, has its principal place of business in Brooklyn, New York.  FAC ¶ 8.  All things considered, the interests of justice also do not appear to favor transfer.

Accordingly, the court DENIES the motion for transfer of venue.

/////

/////

/////

/////

21

IV.    <u>CONCLUSION</u>

The motion is GRANTED in part, as follows:

1.    Plaintiff's RICO claims (claims one and two) are DISMISSED;

2.    Plaintiff's intentional and negligent misrepresentation claims (claims three and four) are DISMISSED;

3.    Plaintiff's promissory fraud claim (claim five) is DISMISSED;

4.    Plaintiff's breach of fiduciary duties claim (claim six) is DISMISSED;

5.    Plaintiff's unlawful business practices claim (claim nine) is DISMISSED;

6.    Leave to amend is GRANTED as to all claims except claims one and two against defendant Vacaya;

7.    The motion to transfer venue in the alternative is DENIED; and

8.    Any second amended complaint consistent with this order shall be filed within twenty-one days of the date this order is filed.

This order resolves ECF No. 15.

IT IS SO ORDERED.

DATED:  August 25, 2020.

_____
CHIEF UNITED STATES DISTRICT JUDGE