UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Eric Hodgson,<br><br>                    Plaintiff,<br><br>     v.<br><br> Randle Roper, et al.,<br><br>                    Defendants. | No. 2:20-cv-00650-KJM-DB<br><br>ORDER |

In a previous order, the court dismissed the complaint and granted defendants' motions for monetary sanctions against plaintiff Eric Hodgson and his counsel, Thomas Barth. *See* Prev. Order at 15–25, ECF No. 42, *reconsideration denied*, ECF No. 51. The court permitted defendants to request attorneys' fees and costs as a sanction. *Id.* at 25. They have now filed a request, and as explained in this order, the court **grants that request in part**.

I.      BACKGROUND

The court found in its previous order that Hodgson had forged two California Superior Court orders effectively exonerating him from a previous fraud conviction. Prev. Order at 23. He did this in an attempt to minimize that conviction and persuade the individual defendants to hire him and make him a member of their company. *See id.* Hodgson did eventually become a member, but the company later terminated his membership. *Id.* at 5. Hodgson then filed this action. *See id.* He asserted a variety of claims about his relationship and contracts with the

1

company, the same relationship and contracts he procured in part by the forgery. *Id.* The defendants did not know about the forgery at the time; their counsel discovered it while the case was pending. *See id.* at 17–18. The court found Hodgson's decision to pursue this action while concealing the forgery was "abusive and deceptive and deserving of sanctions under this court's inherent authority." *Id.* at 24.

The court also found Barth's conduct warranted sanctions under Federal Rule of Civil Procedure 11, 28 U.S.C. § 1927, and this court's inherent authority. After the forgery came to light, defendants moved to dismiss and requested sanctions against Hodgson and Barth. *See id.* at 5–6, 17–18. In opposition to these motions, Barth filed briefs and declarations on Hodgson's behalf without investigating whether the claims in those documents had "evidentiary support" and were "not being presented for any improper purpose." *Id.* at 23 (quoting Fed. R. Civ. P. 11(b)). For example, Barth filed a declaration by Hodgson without reasonably attempting to reconcile a stark inconsistency between that declaration and the allegations in Hodgson's complaint. *See id.* Nor did Barth reasonably investigate Hodgson's assertion that Randle Roper, one of the individual defendants, had participated in Hodgson's forgery before advancing that allegation on Hodgson's behalf. *See id.* at 23–24. Barth also filed a second declaration by Hodgson in support of this joint-forgery theory, and like Hodgson's first declaration, the second included unfounded claims that flatly contradicted Hodgson's own previous statements. *See id.* at 24. Finally, Barth "advanced the unlikely theory, on Hodgson's behalf, that Roper secretly publicized embarrassing allegations about himself . . . in the hope that Hodgson would take the blame." *Id.* But Barth did not have evidence to support this theory. *See id.*

Although the court found sanctions were appropriate, the court denied defendants' request to sanction Hodgson and Barth for not immediately dismissing the action after the forgery came to light. *See id.* at 22. Although the forgery might very well have supported an affirmative defense that the disputed contracts were procured by fraud, the court dismissed the complaint without reaching that defense. *See id.* at 14–15. In addition, it would not have been frivolous for Hodgson and Barth to seek discovery about the evidence the defendants would rely on to mount a defense based on fraudulent inducement. *See id.* at 22. The court also declined to sanction

Hodgson and Barth based on the defendants' theory that Hodgson's primary purpose in filing this action was to harass and embarrass the individual defendants. *Id.*

After determining monetary sanctions were warranted, the court permitted defendants to submit a request for the attorneys' fees and costs they incurred as a direct result of Hodgson's and Barth's sanctionable conduct, including for the fees and costs they incurred while seeking sanctions. *Id.* at 25. Defendants have now submitted a request. *See generally* Fee Appl., ECF No. 46. It includes three parts:

1. Against Hodgson, defendants seek the fees and costs they incurred and paid for their work before the action was dismissed, i.e., $155,237.04 and $2,359.59, respectively. *See id.* at 3–5. Hodgson argues the defense is not entitled to all of these fees and costs because some are not directly attributable to his sanctioned conduct. *See* Objs. at 5–7, ECF No. 48.

2. Against Barth, defendants request attorneys' fees of $1,550.87, which they incurred and paid addressing Hodgson's first declaration. *See* Fee Appl. at 5–6. Barth argues that award would wrongly compensate defendants for pursuing a fraudulent inducement defense, which the court did not reach. *See* Objs. at 7–8.

3. Against Barth, defendants also seek attorneys' fees of $57,111.33, which they incurred and paid responding to Hodgson's second declaration, responding to the accusations against Roper, and seeking sanctions. *See* Fee Appl. at 6–7. Barth objects to the number of hours counsel billed as excessive. *See* Objs. at 9–10.

Some of defendants' requests overlap; the fees and costs defendants seek from Barth are included in those they seek from Hodgson. *See* Fee Appl. at 13. Defendants accordingly propose sanctions of $58,662.20 against Barth, his firm, and Hodgson jointly, with the remainder of $98,934.43 to be paid by Hodgson. *See id.* Finally, in addition to the specific objections noted above, Barth and Hodgson argue the circumstances do not justify such a large sanctions award. *See* Objs. at 10–15. Defendants disagree. *See generally* Reply, ECF No. 50.

## II.   SANCTIONS AGAINST HODGSON

The court begins with the sanctions against Hodgson.  The court has determined sanctions are appropriate under its inherent authority "to prevent and remedy the harms of abusive and wasteful litigation."  *See* Prev. Order at 23, 25.  As summarized in this court's previous order, "[a] sanctions order must be 'limited to the fees the innocent party incurred solely because of the misconduct—or put another way, to the fees that party would not have incurred but for the bad faith.'"  *Id.* at 21 (quoting *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1184 (2017)).  For that reason, the court must limit any sanction against Hodgson to the fees defendants would not have incurred but for the forged court orders.

Defendants request an order requiring Hodgson to reimburse all of the fees and costs they incurred and paid before the case was dismissed.  Fee Appl. at 4–5.  Defendants have not demonstrated all of the fees and costs they incurred and paid were the direct results of Hodgson's forgeries: the court did not reach the fraudulent inducement defense, and it is unclear whether and when defendants might have prevailed on that defense.  Their request was not unreasonable however; Hodgson's actions prevented them from seeking discovery related to that defense and from asserting it earlier in this litigation.  It is not possible to know exactly what defendants could or would have done differently, but precision is not the goal.  The court's task in this situation is "to do rough justice."  *Goodyear*, 137 S. Ct. at 1187 (quoting *Fox v. Vice*, 563 U.S. 826, 838 (2011)).

The fairest available estimate for the direct cost of Hodgson's actions are the costs defendants incurred and paid before they knew about the forgeries.  *See id.* (describing district court's discretion to impose appropriate sanction).  Defendants would very likely have pursued a different and potentially more effective litigation strategy with that information.  The true costs of Hodgson's actions are likely greater than this.  This action might never have begun if Hodgson had not forged the two orders.  For that reason, the costs defendants incurred before they learned of the forgeries set the floor on the direct costs of Hodgson's abusive and wasteful conduct.

Defense counsel incurred fees of at least $43,766.19 in early 2020 while litigating their previous motions to dismiss.[1]  Barth and Hodgson do not dispute the hourly rates underlying these fees.  *See* Objs. at 9 n.8.  The court also finds defense counsel devoted a reasonable number of hours to this action in the relevant period given the length and complexity of Hodgson's complaints and legal claims.

Hodgson asks the court not to impose such a high sanction.  He asks the court to consider whether his actions were willful or part of a pattern, whether his conduct affected the whole case or only a part, his lack of legal training, and his allegedly meager financial resources.  *See* Opp'n at 11–13.  The court has considered each of these factors and finds that none warrants any further reduction.  Three considerations are most salient.  First, as explained above and in footnote 1, the amount of the sanction imposed against him likely underestimates the direct costs of his actions.  Second, Hodgson's actions were willful and deceptive and affected the entire case.  Third, his claims of meager financial resources are uncorroborated and, once more, potentially inaccurate.  *See* Reply at 6–7 & n.2 (citing Brooks Decl. ¶ 6, ECF No. 50-4 and pointing out Hodgson has documented extensive international travel on social media despite his claims of poverty).

In sum, the court imposes a sanction of $43,766.19 against Hodgson under its inherent authority to prevent and remedy the harms of abusive and wasteful litigation.

### III.   SANCTIONS AGAINST BARTH

As noted above, defendants request sanctions against Barth in two categories.  First, they request twenty percent of the fees they incurred while preparing their reply in support of their

---

[1] It is unclear when exactly defendants and their counsel learned the court orders were not genuine.  Randle Roper states in a declaration that Vacaya's owners became suspicious of the court orders "[a]s a result of certain suspicious fraudulent activity that took place in connection with this case."  Roper Decl. ¶ 25, ECF No. 23-2.  This statement appears to reference events in April 2020.  *See* Roper Decl. ¶ 8, ECF No. 29-3.  Defense counsel later confronted Barth in September 2020.  *See* Brooks Decl. ¶¶ 4–6, ECF No. 23-6.  The court therefore uses May 2020 as a conservative end-point for purposes of calculating a sanction.

Todd Brooks devoted 59.1 hours at $396 per hour between March 27, 2020 and April 28, 2020.  Fee Appl. at 4.  He spent 22.3 hours at $367.53 per hour between April 29, 2020 and May 20, 2020.  *Id.*  Aaron Nichols devoted 36.6 hours at $325 per hour between March 27, 2020 and April 28, 2020, and he spent 0.9 hours at $301.63 per hour between April 29, 2020 and May 20, 2020.  *Id.*

third motion to dismiss, i.e., $1,550.87.  *See* Fee Appl. at 5–6.  Approximately two of the ten pages in that reply were related to the declaration that eventually led to sanctions against Hodgson and Barth, so twenty percent is a sensible proportion.  *See* Reply Mot. Dismiss at 8–10, ECF No. 26.  This proposed sanction reasonably compensates defendants for Barth's noncompliance with Rule 11(b), as that Rule permits.  *See* Fed. R. Civ. P. 11(c)(4) ("The sanction may include . . . an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation.").

Defendants' second proposed sanction against Barth is larger.  They request $57,111.33 incurred for time seeking sanctions.  *See* Fee Appl. at 6–7.  Counsel also spent part of that time responding to Hodgson's second declaration and to Barth's allegations against Roper.  *See id.*  The court permitted defendants to request these fees and costs.  *See* Prev. Order at 23–24.

Barth argues defense counsel spent an unreasonable number of hours seeking sanctions.  *See* Objs. at 9–10.  According to his objections, he spent only half as much time on the same dispute.  *See id.* at 10.  The court will not reduce the sanction based on this difference.  Barth has not identified any particular unnecessary tasks, duplicative work, or wastes of time in defense counsel's timekeeping records.  *Cf.* Fee Appl. Ex. 3, ECF No. 46-3 (timekeeping records).  The complicated circumstances of this case and Hodgson's strident opposition justified defense counsel's time.  Defendants also appear to have concluded their attorneys allocated their time reasonably; defendants paid their fees in full.  *See* Brooks Decl. ¶ 5, ECF No. 46-1.

Finally, Barth argues a lesser sanction is more appropriate given the circumstances here.  *See* Objs. at 10–15.  He argues, for example, his conduct was not willful, was not part of a pattern, did not extend to any other cases, did not infect the whole pleading, and was not intended to injure.  *See id.* at 10–12.  He also argues the defendants' proposed sanction is larger than necessary to deter himself and others, and he contends the defendants are partially responsible for their own fees and provoked the conduct that led to sanctions.  *See id.* at 13–15.  These considerations are relevant.  *See* Fed. R. Civ. P. 11, Advisory Committee's Notes to 1993 Amendments to subsections (b) and (c).  "The court has significant discretion in determining what sanctions, if any, should be imposed for a violation, subject to the principle that the sanctions

should not be more severe than reasonably necessary to deter repetition of the conduct by the offending person or comparable conduct by similarly situated persons." *Id.*

Having considered these circumstances, the court declines to impose sanctions equal to all of the fees defendants incurred pursuing sanctions. The court did not award defendants all of the sanctions they requested against Hodgson, *see* Prev. Order at 22, so it is reasonable not to compensate them for all of the time they spent seeking those sanctions, *cf. Thompson v. Gomez*, 45 F.3d 1365, 1368 (9th Cir. 1995) (affirming reduction in "fees-on-fees" in equal proportion to differences between fees sought and obtained). Nor have defendants identified any similar conduct by Barth in the past or in other cases that might justify a full award of fees in this case. Finally, although Barth did not perform the investigation Rule 11 requires, the record does not show his failure was willful or intended to cause harm. The court therefore reduces the sanction against Barth by half, to $28,555.67. This sum should be sufficient to deter similar conduct in the future and compensates defendants for the direct consequences of Barth's actions. None of the other arguments advanced in Barth's and Hodgson's objections favor any further reductions.

### IV.    CONCLUSION

Defendants' request for monetary sanctions against Eric Hodgson and Thomas Barth are **granted in part**. The court imposes **$43,766.19** in monetary sanctions against Hodgson and **$28,555.67** against Barth and his firm jointly. *See* Fed. R. Civ. P. 11(c)(1) ("Absent exceptional circumstances, a law firm must be held jointly responsible for a violation committed by its partner, associate, or employee."). The court otherwise declines to impose any sanctions jointly and severally. Hodgson, counsel, and his firm shall remit payment to defendants through their counsel **within 60 days** of the filed date of this order. That deadline will not be extended without court approval based on good cause shown. This order resolves ECF No. 46 and closes the case.

IT IS SO ORDERED.

DATED: January 19, 2023.

CHIEF UNITED STATES DISTRICT JUDGE